## 10016

### REAVES *ET AL.* v. WESTERN UNION TELEGRAPH CO.

#### (96 S. E. 295.)

1. DAMAGES—PUNITIVE DAMAGES—SUPPORT BY ACTUAL DAMAGES—PRESUMPTION.—Where there is evidence of a reckless or wilful invasion of a legal right the law presumes sufficient actual damages to sustain verdict for punitive damages.

2. CARRIERS—POWERS—SPECIAL CONTRACT.—A common carrier may make special contracts outside his duties to the public, and may make some special contracts relative to such duties, if not such as are prohibited by statute or public policy, and under such contracts he is not held to the strict liability of a common carrier.

3. DAMAGES—PUNITIVE DAMAGES—BREACH OF CONTRACT.—Punitive damages are not recoverable for the mere breach of a private contract, in the absence of circumstances creating a cause of action for fraud.

4. ACTION—TORT OR CONTRACT—CARRIERS.—For dereliction in duty owing to public by common carrier, he is liable in tort to person injured, though tort originated in breach of contract, and actual and punitive damages may be awarded, as circumstances warrant.

5. TELEGRAPHS AND TELEPHONES — STATUTE — "COMMON CARRIER."—The provision of Const., art. IX, sec. 3, that all telegraph companies engaged in transmitting intelligence for hire are common carriers is merely declaratory of the common law.

6. CARRIERS—TEST OF COMMON CARRIER.—The most general test of a common carrier is the offer to carry for all alike for hire.

7. CARRIERS—COMMON CARRIER—EXCLUSIVE BUSINESS.—A common carrier may be such, though his business is not his exclusive business, and he is not continually or regularly engaged in it.

8. TELEGRAPHS AND TELEPHONES—TRANSMISSION OF MONEY—COMMON CARRIER.—Telegraph company, which offered to public its services in transmitting money, brought itself into status of common carrier with respect to such business, so far as rules applicable to relation might be applied.

9. TELEGRAPHS AND TELEPHONES—TRANSMISSION OF MONEY—PUNITIVE DAMAGES—QUESTION FOR JURY.—In action against telegraph company for actual and punitive damages for failure to transmit money promptly, issue of punitive damages *held* for jury under evidence as to conduct of company's agents.

10. TRIAL—INSTRUCTIONS—PRESUMPTION—MISLEADING CHARACTER—"PRESUME."—In action against telegraph company for delay in transmitting money, instruction that recklessness might be presumed from unreasonable delay was not misleading; context showing that "presumed" was used in sense of "inferred," and not to state unyielding presumption of law.

11. TELEGRAPHS AND TELEPHONES—TRANSMISSION OF MONEY—DELAY.—Where a husband desired to wire money to his wife, and asked telegraph agent as to time it would take, and was told 30 minutes, agent not informing him that the money would have to be transmitted through bank, while it was after banking hours, telegraph company cannot set up as defense to action for delay necessity to transmit through bank.

12. TELEGRAPHS AND TELEPHONES—TRANSMISSION OF MONEY—DELAY— ENDEAVOR TO RECTIFY.—Telegraph company, through which husband had attempted to transmit money to wife, after agent knew cause of delay, which was the closing for day of bank through which money was to be sent, should have endeavored to assist wife to get money.

Before PRINCE, J., Dillon, Spring term, 1917.    Affirmed. Action by Joe Reaves and Annie Reaves. From judgment for plaintiffs, defendant appeals.

*Messrs. Albert T. Benedict, Willcox & Willcox* and *S. M. Wetmore,* for appellants, cite: *As to refusal of motion for directed verdict as to punitive damages:* State Constitution (1895), article IX, sec. 2; 19 S. C. 353; 90 S. C. 436; 36 S. C. 110; 17 S. C. 467; 70 S. C. 83; 57 L. R. A. 611; 37 Cyc. 1775. *As to there being no sufficient evidence of wilfulness:* 84 S. C. 482; 69 S. C. 545; 48 S. E. 622; 70 S. C. 83; 49 S. E. 12; 70 S. C. 418; 50 S. E. 6; 75 S. C. 97; 55 S. C. 129; 77 S. C. 404; 58 S. E. 10; 65 S. C. 99; 43 S. E. 448; 72 S. C. 256; 51 S. E. 697; 73 S. C. 385; 53 S. E.

639; 76 S. C. 529; 57 S. E. 543; 77 S. C. 404; 58 S. E. 9; 79 S. C. 160; 60 S. E. 435; 80 S. C. 207; 60 S. E. 697. *As to there being no presumption of wantonness and wilfulness:* 84 S. C. 482. *As to the right of the telegraph company to establish office hours:* 71 S. C. 386; 77 S. C. 378; 71 S. C. 303; 73 S. C. 320; Smith (N. H.) 249.

*Messrs. L. D. Lide* and *Joe P. Lane,* for respondents, cite: *As to refusal of motion for directed verdict as to punitive damages:* 70 S. C. 87; 62 S. C. 254; 57 S. C. 331; 65 S. C. 438; 35 S. C. 493; 77 S. C. 62; 2 Hill 470; 2 Rich. 93; 13 Cyc. 13; 108 S. C. 219. *As to there being sufficient evidence of wantonness or wilfulness to go to the jury:* 89 S. C. 197; 78 S. C. 508; 69 S. C. 550; 72 S. C. 264; 70 S. C. 87; 77 S. C. 399 and 404. *As to former incorrect charge being cured by subsequent charge stating a correct proposition:* 105 S. C. 509; 77 S. C. 399; 84 S. C. 2119; 87 S. C. 324; 87 S. C. 388; 89 S. C. 36. *As to remarks made by Judge when ruling on a motion:* 81 S. C. 379; 82 S. C. 326-327; 73 S. C. 383.

July 6, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiffs sued to recover actual and punitive damages for defendant's alleged negligence and reckless dereliction of duty in the matter of transmitting a sum of money from plaintiff, Joe Reaves, at Dillon, to his wife, at Edgefield. In July, 1915, Mrs. Reaves was called from her home in Dillon to the bedside of her sick brother at Edgefield. He died on Saturday, the 10th, at 1 p. m., and at 3:25 p. m. she sent her husband the following telegram:

"Brother dead. Cannot get check cashed here. Mail thirty-five dollars on six o'clock train. Answer."

She had been told by the postmaster at Edgefield that, if the money was mailed on the 6 o'clock train at Dillon, she would get it the next morning about 9 o'clock. The telegram was sent over defendant's lines and was delivered within an hour. Being anxious to get the money to his wife as soon as possible, Mr. Reaves conceived the idea of sending it to her by telegraph, and went to defendant's office at Dillon, and asked that agent how long it would take to get the money to her at Edgefield by telegraph. He replied that she ought to receive it within 30 minutes. Thereupon, at 4:35 p. m., he paid the agent $50 and the charges for transmitting it, and, at the agent's suggestion, telegraphed his wife that he had sent the money by telegraph. That message was promptly delivered, and Mrs. Reaves went to defendant's office at Edgefield to get the money. The agent there told her that he did not know anything about it. She informed him of the circumstances and of her urgent need of the money, and asked him to help her to get it, and called several times afterwards to get it, but each time she received the same answer. A little later she telegraphed her husband that she had not received the money. On receipt of her telegram, he went to the agent at Dillion, who told him that, if the banks were closed, the money would be paid to her by check of the telegraph company, which was good anywhere, and would be cashed by anybody. Thereupon, at 6:30 p. m., he telegraphed his wife: "Go ahead and use telegraph check where you trade to merchant." But no check had been given to her. On the following Monday morning, she called at the Edgefield office three different times after 9 o'clock to get the money, with the same result as before. About 2:30 p. m. that day, the agent told her to go to the bank, and they would probably pay it to her. She then went to the bank, and received the money.

Defendant undertook to excuse the delay by showing: That Edgefield was not a money order office; that is, that defendant had some offices at which money sent by telegraph is paid in cash, or by check, and that Edgefield was not such an office. That this money was transmitted in this way: The Dillon agent wired the order to defendant's manager at Charleston, a pay order office, and he ordered defendant's bank there to wire its correspondent bank at Edgefield to pay the money to Mrs. Reaves. That, as the Charleston bank had closed for the day, when the order was received by defendant's Charleston manager, the money could not be forwarded until the Charleston bank opened on Monday, though the bank at Edgefield was open from 5 to 6 p. m. on Saturday.

Defendant moved for a directed verdict as to actual damages, on the ground that none had been proved, and as to punitive damages on the grounds (1) that such damages cannot be recovered in the absence of actual damages; (2) that as defendant was under no legal duty to transmit money by telegraph, same not being a part of its business as a common carrier, the contract to do so was a special contract between private individuals, for the breach of which punitive damages are not recoverable in the absence of fraud, of which there was no proof; and (3) that, in any event, the evidence does not warrant the infliction of punitive damages.

The Court sustained the motion as to actual damages, but refused it as to punitive damages, and submitted the evidence upon that issue to the jury, holding, as to the first ground, that where there is evidence of a reckless or wilful invasion of a legal right the law presumes sufficient actual damages to sustain a verdict for punitive damages; as to the second, that defendant, being a public service corporation, offering to perform the service in question for all the public alike for hire, was under a legal duty to perform it for plaintiffs, and,

therefore, was liable to them in tort for a reckless, wilful, or wanton dereliction in the performance of that duty; and, as to the third, that the evidence was susceptible of more than one inference, and, therefore, it was for the jury.

The ruling as to the first ground of the motion as to punitive damages is sustained on the authority of *Jones v. Railroad Co.,* 108 S. C. 217, 94 S. E. 490.

As to the second ground, the precise point has never been decided by this Court; but we think it was correctly decided. There is no doubt of the right of a common carrier to make special contracts outside the scope of his duties to the public; and he may make some special contracts relative to those duties, provided they are not such as are prohibited by the statute or public policy. Under such contracts, he is not held to the strict liabilities imposed by law upon common carriers, and, therefore, in some respects at least, the rights of the parties under them are determined according to the rules applicable to contracts between private individuals. We have so held in numerous cases, some of which are cited by appellant, notably the recent case of *Fair Association v. A. C. L. R. C.,* 90 S. C. 436, 73 S. E. 790, where the railroad company made a special contract outside of the scope of its general duties to the public. Nor is there any doubt of the rule that punitive damages are not recoverable for the mere breach of a private contract, in the absence of circumstances giving rise to a cause of action for fraud. *Welborn v. Dixon,* 70 S. C. 108, 49 S. E. 232, 3 Ann. Cas. 407.

But the rule is well settled that for dereliction in the performance of a duty owing to the public by a common carrier he is liable in tort to the person injured thereby, notwithstanding the tort originated in breach of contract, and, in such actions, actual and punitive damages, one or both, may be awarded, as the circumstances may warrant.

The question, then, is brought to this: Is defendant a common carrier in the transmission of money by telegraph? With regard to the transmission of intelligence for hire, defendant was made a common carrier by section 3 of article IX of the Constitution, which provides that all telegraph corporations engaged in the business of transmitting intelligence for hire are common carriers. That provision, however, is merely declaratory of the common law. *State v. Telephone Co.,* 61 S. C. 83, 39 S. E. 257, 55 L. R. A. 139, 85 Am. St. Rep. 870. Perhaps the most general test of a common carrier is the offering to carry for all alike for hire. *McClures v. Hammond,* 1 Bay 99, 1 Am. Dec. 598; *Harrington v. Lyles,* 2 Nott & McC. 88; *McClure v. Richardson,* Rice 215, 33 Am. Dec. 105; *Littlejohn v. Jones,* 2 McMul. 365, 39 Am. Dec. 132; 4 R. C. L., p. 546, sec. 2. And it is not necessary that the business in which one so engaged shall be his exclusive business, or that he shall be continually or regularly engaged in it. 4 R. C. L., p. 547, sec. 4.

While the transmission of intelligence is not the transmission of money, yet, in effect, it may amount to the same thing. Strictly speaking, nothing is actually transmitted over the wires, but by the use of them as a medium of communicating intelligence the same result may be accomplished as if the money were sent, and so we speak of it as sending money by telegraph. So, when we speak of a telegraph company as a common carrier, it is the legal status or relation which the company bears to the public with respect to the business that is in contemplation, rather than the physical facts involved in the conduct of the business or in the particular transaction. Nor is it to be understood thereby that such a company is subject to all the duties and liabilities imposed by law upon common carriers. It is subject to them only to a limited extent—generally speaking, only to the extent that reasonable analogy makes them applicable.

Mr. Reaves could have deposited his money in a bank in Dillon, and had that bank telegraph the bank at Edgefield to pay that amount to his wife, and if defendant had been guilty of negligence or a reckless disregard of duty in handling the messages about the matter it would have been liable in tort far actual or punitive damages, according to the circumstances. In that event defendant would have received only the regular charges for the messages. But to increase its business and revenues, by including in its charges the exchange for transmitting money, it offered the public its services and facilities in handling the entire transaction in such cases; and in doing so it voluntarily brought itself into the status and relation to the public of a common carrier with respect to that business—at least to the extent that the rules applicable to that relation reasonably may be applied to the conduct of the business.

As to the third ground of refusing the motion, we are satisfied that the evidence required submission of the issue to the jury. Defendant's agents at Dillion and Edgefield were both fully informed of all the facts and circumstances, and notwithstanding they knew of the delay, and could easily have ascertained the cause of it, and could have saved plaintiffs the annoyance, inconvenience and expense caused by it, they made no effort whatever to do so. Their conduct manifested an indifference to the rights of plaintiffs which defendant's evidence falls far short of excusing.

Appellant complains of the instruction that: "Recklessness may be presumed where there is a very unreasonable delay in the delivering of a telegram, not explained to the satisfaction of the jury."

The error assigned is that, while long and unexplained delay is evidence from which recklessness may be inferred, there is no presumption of law of recklessness arising from such delay—that the law does not presume a wilful derelic-

tion of duty. There is a difference between presumptions of law and presumptions of fact. But the context here shows clearly that the word "presumed" was used in the sense of "inferred," and evidently the jury were not misled to defendant's prejudice.

Appellant's next contention is that it should be absolved from liability, because the bank in Charleston had closed for the day, when the pay order reached its Charleston agent, and, therefore, it should not have been expected to 11, 12 complete the transaction until a reasonable time after the bank opened for business on Monday, because defendant's rules required the money to be transmitted through the agency of that bank. There would be some force in that contention if the business had been accepted, subject to that or such like causes of delay, or if Mr. Reaves had merely deposited the money to be sent, without making inquiry as to the existence of causes of delay. But he made the inquiry, and was told that his wife should get the money within 30 minutes. The Dillon agent knew—says he knew —that the transaction would have to be handled through the bank, because Edgefield was not a pay order office, and, notwithstanding he knew the facts, and knew that it was then after banking hours, for Mr. Reaves had called his attention to that fact by telling him that he could not pay him the money in cash, but would have to give him a check, because the bank had closed for the day, he accepted the business and assured Mr. Reaves of prompt delivery of the money to his wife, without giving him any intimation of the possibility, or even probability, of delay for any such reasons. If Mr. Reaves had been informed of the probability of delay for such reasons, as under the circumstances he ought to have been, then he would not have been heard to complain of reasonable delay caused thereby. But, as he was not informed when he should have been, it is too late now for defendant to set them up as grounds of excuse or defense.

16—110.

If he had been informed, he would at least have had the opportunity of trying to get the money to his wife in some other way.

There is no doubt of the right of the bank to establish business hours and conform to them, and no doubt of defendant's right to establish reasonable office hours and reasonable rules and regulations for the transaction of its business, including the business in question, and to select its own agents and agencies for the transaction of that business, and prescribe by rule in minutest detail how it shall be done. But these matters are scarcely relevant to the issue, for it was defendant's duty, under the circumstances, to inform Mr. Reaves of the probability of delay for the reasons which it now urges in excuse and extenuation, and, having failed to do so, it was its duty to make some effort to do what it contracted and was paid to do. There is no evidence that the bank in Charleston, or any of its officers, was even asked on Saturday to wire the bank in Edgefield to pay the money. That might at least have been done. And even after defendant's agents knew the cause of delay, they made no effort to assist plaintiff's wife to get the money. That, too, might, and, under the circumstances, should have been done.

Judgment affirmed.