14021

## SOUTHERN RY. CO. v. HERNDON

(179 S. E., 306)

Messrs. Frank G. Tomkins and J. W. Manuel, for appellant,

Mr. George Warren, for respondent,

March 20, 1935.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

Stewardson Supply Company of Parkersburg, Ill., shipped to itself at Furman, S. C., one carload of hay weighing

23,200 pounds. Before the car reached its destination, the railroad agent at Furman was notified of the shipment and was instructed to advise J. C. Herndon of Furman, S. C., of its arrival, permit inspection thereof, and deliver only to holder of order upon surrender of the order. Herndon delivered to the railroad agent the original order from Stewardson Supply Company, which directed the agent to deliver the car of hay to J. C. Herndon. Stamped across the face of the order were the words: "Accept Paid Freight Bill as Cash Item."

The agent calculated the freight due at 51 cents per hundred pounds, which Herndon paid. He accepted the shipment and signed the receipt as consignee of the hay described in the freight bill. Thereafter it was discovered that the correct rate of freight was 59 cents per hundred pounds, and that there was an undercharge of $18.56 on the shipment. When demand was made on Herndon for the amount of this undercharge, he refused to pay it on the ground that Stewardson Supply Company had sold the hay to him at a delivered price. Suit was brought in the magistrate Court to recover this sum, but judgment was given for the defendant, which was affirmed on appeal to the Circuit Court, Judge Johnson in his order stating: "Under all the facts and circumstances of this case I hold that the justice of this case is such that the Railway Company should go upon the shipper, who was also the consignee, for the amount of the freight that is actually and justly due and owing by the shipper to the Railway Company."

One of the cardinal causes which brought about the creation of the Interstate Commerce Commission, and gave it power to regulate and fix rates of transportation by common carriers, was the pernicious habit of such carriers, in their sharp contest for business, to rebate rates and to give to favored customers and localities special rates and privileges, thus practically destroying legitimate competition. The Interstate Commerce Commission, in the exercise of the

plenary power granted it by the Congress, requires carriers to submit to it their tariff of rates. When these are approved by the Commission they become the only lawful rates, and carriers are compelled to collect them as thus fixed by the tariffs. It has been repeatedly held by the commission that if, even through inadvertence or mistake, a less amount is collected than the tariff rate, this is such discrimination as is prohibited by law. It becomes the duty of the carrier to collect the correct amount of the transportation charge, and its failure to do so subjects it to the penalty provided by the Commission. So much of Section 6 (7) of the Interstate Commerce Act (49 U. S. C. A. § 6 (7)) as is pertinent here is in these words: "* * * nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

This provision of the law has received many interpretations by the Federal Courts and those of the several states. Our own Court in *Southern Railway Company v. Collins*, 127 S. C., 219, 119 S. E., 833, has decided the question here involved. It is true that case was sent back because there was conflicting evidence as to the weight of the freight and, therefore, of the amount of the unpaid charges; but no such point is made here. The main issue in the *Collins case,* as in the one before us, turned on the question whether the defendant was the consignee. The trial Judge was charged with error in concluding that Collins was liable for excess freight, "it being respectfully submitted that the

defendant was not a party to the contract, and was not liable for such freight as was demanded of it, and any excess of that amount should have been paid by the consignor or consignee, they being one and the same person in this instance." The holding of the Supreme Court, in disposing of this assignment of error, is correctly stated in the syllabus, in the following language: "Where consignor shipped goods to his own order by a bill of lading providing for notice to defendant, and defendant accepted the goods and paid the freight demanded, he was liable to carrier for an additional freight charge, due to an error in stating the weight of the shipment."

This holding is adverse to the position taken by Herndon in the present case and upheld by the Circuit Judge.

The respondent contends, however, that he is not the consignee in this shipment, but that Stewardson Supply Company is both consignor and consignee. That was the issue involved in Brown v. Railroad Co., 91 S. C., 377, 74 S. E., 754, 755. These facts appear in that case: "Young & Metzner, of New York, consigned to their own order, at Wedgefield, S. C., a bundle of bagging in a bill of lading which contained the words, 'order notify W. T. Brown.' Brown paid for the bagging and obtained the bill of lading, which he presented to defendant's agent at Wedgefield and demanded the bagging, which was not delivered to him, because it had been lost." Brown waited a reasonable time for the railroad company to find the bagging and then filed a claim for the loss. As he was not paid the claim within the time prescribed by law, he brought suit for the value of the bagging and for $50.00, the penalty allowed by statute to the "consignee aggrieved." Was Brown the "consignee aggrieved?" The Court, by Mr. Justice Hydrick, said in answer to that question: "He was recognized and dealt with, both by the shippers and by the defendant, as the consignee. To be sure, he had no legal right to the goods until he possessed himself of the bill of lading. But, as soon as he did

that, he became, in contemplation of law, the consignee of the goods."

The case of *Pittsburgh Ry. Co. v. Fink*, 250 U. S., 577, 40 S. Ct., 27, 28, 63 L. Ed., 1151, is, in our judgment, determinative of this case: "It was, therefore, unlawful for the carrier upon delivering the merchandise consigned to Fink to depart from the tariff rates filed. The statute made it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates duly filed. Fink, as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff. When the carrier turned over the goods to Fink upon a mistaken understanding of the rate legally chargeable, both it and the consignee undoubtedly acted upon the belief that the charges collected were those authorized by law. Under such circumstances consistently with the provisions of the Interstate Commerce Act the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified as required by the statute. For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate. *Texas & Pacific Ry. Co. v. Mugg & Dryden*, 202 U. S., 242, 26 S. Ct., 628, 50 L. Ed., 1011. The transaction, in the light of the act, amounted to an assumption on the part of Fink to pay the only legal rate the carrier had the right to charge or the consignee the right to pay. This may be in the present as well as some other cases a hardship upon the consignee due to the fact that he paid all that was demanded when the freight was delivered; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation. *Louisville & Nashville R. R. Co., v. Maxwell*, 237 U. S., 94, 35 S. Ct., 494, 59 L. Ed., 853, L. R. A., 1915-E, 665. In that case the rule herein stated was enforced

as against a passenger who had purchased a ticket from an agent of the company at less than the published rate. The opinion in that case reviewed the previous decisions of this Court, from which we find no occasion to depart."

The Circuit Judge holds that it is just that the consignor should pay this demand for additional transportation charges. That may be true as between Stewardson Supply Company and Herndon, but this is not an issue between them. The government is compelling the carrier to collect this charge in obedience to the law which prohibits discrimination, and it must collect it from the consignee, the one who receives the shipment and pays the charges.

There is in this case no showing that Herndon cannot recover from Stewardson Supply Company this extra freight charge which the law compels him to pay.

The case of *New York Central & H. R. R. Co. v. York & Whitney Co.*, 256 U. S., 406, 41 S. Ct., 509, 65 L. Ed., 1016, is in line with the *Fink case*.

In *Western Grain Co. v. St. Louis-San Francisco Ry. Co.* (C. C. A.), 56 F. (2d), 160, will be found an illuminating discussion of this question.

This is a shipment moving in interstate commerce. It is, therefore, governed by federal law. That law plainly holds Herndon liable for the excess freight charge.

The judgment of the Circuit Court is reversed, and the case remanded, with directions to enter judgment for the plaintiff for the amount sued for.

MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS, Circuit Judge, concur.

MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE, Circuit Judge, dissents.