14097

SOUTHERN RAILWAY COMPANY v. CALHOUN TWINE MILL

(180 S. E., 557)

*Messrs. Adam H. Moss* and *Frank G. Tompkins,* for appellant,

*Mr. J. C. Hiott,* for respondent,

June 26, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought in the Court of Common Pleas for Calhoun County for the purpose of collecting an undercharge of freight on three shipments made in interstate commerce of partly burned and wet cotton, the shipments being from Haynesville, La., to St. Matthews, S. C. The

cause of litigation arose in this wise: A. S. Smoak, of St. Matthews, inquired of the agents of the plaintiff, Southern Railway Company, at St. Matthews, S. C., the rate upon partly burned and wet cotton from Haynesville, La., to St. Matthews, S. C., and was informed that the rate was 81½ cents per hundred pounds. Relying upon this quotation of rates, Mr. Smoak purchased at Haynesville, La., cotton of the nature named, and made three shipments thereof to the Calhoun Twine Mill at St. Matthews, S. C. The several shipments arrived at their destination over the Southern Railway Company, the appellant herein, which was the route designated in the three bills of lading. In each of these bills of lading A. S. Smoak was the named shipper and the Calhoun Twine Mill was the named consignee. On the arrival of the cotton at St. Matthews, A. S. Smoak was notified by plaintiff's agent of that fact, and he called for and received the cotton and paid the freight thereon at the rate of 81½ cents per hundred pounds and signed receipts for the cotton in this manner: "Calhoun Twine Mill per A. S. Smoak." Some time after the delivery of the cotton, the plaintiff discovered that its agent had made a mistake when he furnished the rate of 81½ cents per hundred pounds; that the true and legal rate. as is shown by the certificate of the Secretary of the Interstate Commerce Commission in effect and applicable to these shipments of cotton, and which should have been furnished and collected, was $1.64½ per hundred pounds. When this error was discovered, the plaintiff demanded of the defendant the difference between these rates, the undercharge on the three shipments of cotton, which amounted to $1,902.02. Payment was refused, and this action was brought to collect the same.

These are the facts as are substantially set out in the complaint in three causes of action.

The answer was a general denial as to each cause of action and an admission of the corporate capacity of the plaintiff and of the defendant; and of the fact that A. S. Smoak shipped the cotton to the defendant at St. Matthews,

S. C. It denies responsibility for any amount of freight, and alleges that it was only interested in the cotton as a creditor of A. S. Smoak; denies that it paid any freight on the various shipments of cotton alleged in the complaint, but, on information and belief, alleges that the freight was paid by A. S. Smoak; that the bills of lading quoted a rate of 81½ cents and this rate was paid by A. S. Smoak. For a second defense the statute of limitations is pleaded. The third defense sets out the misquotation of rate made A. S. Smoak by the agent of plaintiff at St. Matthews and that A. S. Smoak relied thereon and purchased the cotton in question; that he would not have done so but for the question of rate; that on information and belief the defendant alleges that the consignor, and not the consignee, is liable for such freight charges.

The case was heard by Judge Ramage and a jury at November, 1934, term of the Court for Calhoun County. At the close of all the testimony, plaintiff moved for a directed verdict for the amount demanded in the complaint, which motion was refused and the case submitted to the jury, which found for the defendant. Motion for a new trial was made and refused.

It appears from the record that the presiding Judge, in passing upon the motion made by plaintiff for a directed verdict in its favor, said this: "I am going to charge the jury that they will have to find a verdict for the plaintiff for the full amount unless they find that the plaintiff is estopped. I am perfectly frank to admit to you that you are right on the law, but it does not look to me to be a matter of common sense that a man can be misled to his own hurt and the man who misled him then turn around and reap a benefit for it."

At the hearing in this Court the respondent's counsel stated that since the trial of the case this Court had rendered an opinion in the case of *Southern Railway Co. v. J. C. Herndon*, 175 S. C., 361, 179 S. E., 306, which opinion practically disposes of the first contention in behalf of the respondent adversely to that contention. Therefore it was

withdrawn. It is sufficient to say that that was a case for the collection of an undercharge of freights in which the very question made in this appeal was decided. In that opinion, written by Mr. Chief Justice Stabler, this is said: "One of the cardinal causes which brought about the creation of the Interstate Commerce Commission, and gave it power to regulate and fix rates of transportation by common carriers, was the pernicious habit of such carriers, in their sharp contest for business, to rebate rates and to give to favored customers and localities special rates and privileges, thus practically destroying legitimate competition. The Interstate Commerce Commission, in the exercise of the plenary power granted it by the Congress, requires carriers to submit to it their tariff of rates. When these are approved by the Commission, they become the only lawful rates, and carriers are compelled to collect them as thus fixed by the tariffs. It has been repeatedly held by the Commission that if, even through inadvertence or mistake, a less amount is collected than the tariff rate, this is such discrimination as is prohibited by law. It becomes the duty of the carrier to collect the correct amount of the transportation charge, and its failure to do so subjects it to the penalty provided by the Commission."

That is exactly the situation that prevails in this case. It is admitted that the agent gave Mr. Smoak the wrong rate, a rate much less than the legal and true rate and that Mr. Smoak acted upon it. It is true also that, when the shipments arrived at St. Matthews, the quoted rate and not the true rate was paid. It is held in the *Herndon case, supra,* that it was the duty of the common carrier, the plaintiff in that action, to demand and collect, and, if necessary, sue for the true rate. That opinion was fortified by authorities which need not be quoted in full here. It is sufficient to cite them by title, to wit: *Southern Railway Co. v. Collins,* 127 S. C., 219, 119 S. E., 833; *Brown v. Railroad Company,* 91 S. C., 377, 74 S. E., 754; *Pittsburg, C. C. & St. L. Railway Co. v. Fink,* 250 U. S., 577, 40 S. Ct.,

27, 63 L. Ed., 1151; *New York Central & H. R. R. Co. v. York & Whitney Co.*, 256 U. S., 406, 41 S. Ct., 509, 65 L. Ed., 1016.

So much of Section 6 of the Interstate Commerce Act (49 U. S. C. A., § 6 (7) ) as is pertinent here is in these words : "Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property except such as are specified in such tariffs."

It is therefore apparent that counsel for the respondent in this action was correct in recognizing that the plaintiff was compelled to sue for the undercharge in this action and that the defendant was bound to pay it, unless plaintiff was estopped to demand it.

As shown by the quotation from the record, the presiding Judge refused the motion to direct a verdict for the plaintiff, although he recognized the law applicable to plaintiff's contention. We think this was error. As shown above, the plaintiff, the common carrier, cannot be estopped by the action of its agent in misquoting the rate. The specific language of the act is decisive of that question.

Counsel for respondent further contends that the plaintiff should have brought its action against Mr. Smoak as consignor because the evidence showed that he was the real party in interest; that he bought the cotton for himself and shipped it to the Calhoun Twine Mill as consignee because that corporation had advanced him money for the purchase of the cotton. This position is untenable. The federal law makes the consignee accepting a shipment liable for the tariff charges. The evidence may raise an issue as

between Mr. Smoak and the twine mill, but it cannot avail the latter in this instance.

The Court recognizes that this is a hard case, but "thus the law is written."

It is the judgment of the Court that the judgment of the lower Court be reversed, and the case remanded, with instructions to enter judgment for the plaintiff against the defendant in the sum of $1,902.02.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker, and Fishburne, concur.