14376

HUDDY v. RAILWAY EXPRESS AGENCY, INC

(188 S. E., 247)

Before Mann, J., Kershaw, November, 1934.

*Messrs. Kirkland & deLoach,* for appellant,

*Messrs. W. L. DePass, Jr.,* and *J. C. Long,* for respondent,

November 10, 1936.

The opinion of the Court was delivered by Mr. Justice Fishburne.

This action was brought by Gilbert V. Huddy against the Railway Express Agency, Inc., to recover damages, actual and punitive, for delay in transporting a suitcase containing wearing apparel of the plaintiff, and for alleged fraud, negligence, wantonness and willfulness in the collection of an alleged overcharge. The shipment was delivered to the defendant, Railway Express Agency, Inc., a common carrier of express matter, at the City of Camden, in the State of South Carolina, by W. L. DePass, who directed that it should be transported by the defendant to Portsmouth, in the State of Virginia, and there delivered to

Gilbert V. Huddy, whose local address was at the Marine barracks.

This was in the month of April, 1930. The exact day on which delivery was made to the carrier is in dispute. But it is not in controversy that when delivery of the suitcase was made to the carrier its agent issued its uniform express receipt therefor, which was handed to Mr. DePass as the shipper. The suitcase was not addressed by the shipper, but the carrier's agent at Camden undertook to do this for him, in doing so incorrectly addressed it to the consignee at "Portsmouth, Maine," on a "sticker" which was pasted on the suitcase. The defendant express company took the suitcase to Boston, Mass., which was enroute to the State of Maine. Arriving at Boston, the suitcase was held there by the carrier's agents in that city because it was found then that there was no such place as "Portsmouth, Maine." Immediately by mail, the shipper at Camden, S. C., and the consignee at Portsmouth, Va., were notified of the arrival of the suitcase in Boston and of the inability to deliver it to the Maine address, and instructions were asked as to the disposition to be made of it. Both the shipper and the consignee directed the carrier, by communications from Camden and Portsmouth, respectively, to forward the shipment to Mr. Huddy at his Virginia address. In giving these directions the plaintiff paid 63 cents for a telegram, sent at the carrier's agent's suggestion and direction, to Boston. The carrier, in response to these directions, transported the suitcase to Portsmouth, Va., and several days later delivered it to the plaintiff, who was required by the defendant's agent at Portsmouth, Va., to pay transportation charges from Camden, S. C., to Boston, Mass., and from the latter point to Portsmouth, Va.—a total of $2.67. The trial resulted in a verdict in favor of the plaintiff for $2.40, actual damages, and $1,000.00, punitive damages.

The correct charge from Camden, S. C., direct to Portsmouth, Va., was 90 cents; the jury's verdict, finding actual

damages in the amount of $2.40, is arrived at by subtracting 90 cents from $2.67, and adding the cost of the telegram, which was 63 cents.

Unsuccessful motions were made by the defendant-appellant for a nonsuit and directed verdict as to punitive damages, and also for a new trial.

It is conceded by the appellant that there was a negligent delay on the part of the carrier in the transportation and delivery of this shipment. Therefore, whether the total elapsed time was from April 13th to April 28th, as contended by the plaintiff, or from April 19th to April 28th, as the defendant says, is immaterial. The defendant admits delay, but challenges the plaintiff's right under the law and the evidence to recover punitive damages for delay to this interstate shipment, and on account of exacting the payment of the alleged overcharge.

The receipt above referred to, which was issued by the carrier, contained an agreement that the shipment was received upon an alleged valuation not exceeding $50.00, nor more than 50 cents per pound if weighing more than one hundred pounds (the suitcase weighed thirty pounds), and that the rate was based on the value so agreed upon. The defendant introduced in evidence a certified copy of its rate schedule of file with the Interstate Commerce Commission, and showed by this that its rates were dependent upon and varied with the value declared by the shipper.

The appellant, in its brief, states that the questions involved are three:

I. Can appellant be charged with punitive damages under the facts herein, in view of Federal decisions, Acts of Congress, and rules and regulations of the Interstate Commerce Commission?

II. Does not the contract of carriage limit liability of appellant, under the facts herein, to a sum not exceeding $50.00?

III. Was the verdict of the jury as to punitive damages excessive?

These questions are raised by the exceptions, and are based upon the grounds stated in the unsuccessful motions herein referred to. The respondent states that the first question noted presents the only issue in the case. We think that a consideration of this question will dispose of the controversy.

It is clear that the theory on which the plaintiff rested his case was that of a willful and wanton delay in the shipment of the suitcase in question from Camden, S. C., to Portsmouth, Va.—which shipment was routed via Boston, Mass. —and for fraudulently and willfully requiring plaintiff to pay charges for the detour and entire mileage the suitcase traveled. The testimony on behalf of the plaintiff shows that the suitcase was to be sent charges collect; and that no value was expressly given or declared at the time the shipment was made and receipt therefor issued. The plaintiff testified by deposition that he received notice from the express office in Boston informing him that the suitcase was there; that he had to telegraph that office with directions to ship his suitcase to him at Portsmouth, Va., which telegram cost him 63 cents, and that when the suitcase reached the defendant's office at Portsmouth he went to claim it and was told that he would have to pay the extra charges for the transportation via Boston. He also testified that he was forced to purchase wearing apparel as a result of the delay.

The respondent insists that the facts and circumstances in this case, including the refusal of the defendant's agent at Portsmouth to deliver the suitcase until the entire charges were paid, show a fraudulent willful and wanton disregard of the plaintiff's rights, and that the question of punitive damages was properly submitted by the trial Court to the jury. It may be that under the facts and the inferences which might be drawn therefrom the lower Court would have been justified in submitting this question to the jury, if the

South Carolina law were applicable. But this being an interstate shipment it was necessary for the respondent to go further, as we shall later show, and prove that the alleged fraudulent and willful acts were brought home to the proper officials of the company and ratified by them, or that they authorized such act. There is no evidence of any kind in the record showing that the master defendant corporation either by knowledge before the event or by ratification after the event had had brought home to it any willfulness, wantonness, or oppression on the part of any of its servants who handled this shipment.

We think it evident from a reading of the instructions given by the trial Court to the jury that due effect was not given to the Federal law respecting the right to recover punitive damages in connection with an interstate shipment of merchandise. In fact, the Federal law and the Federal decisions were deemed inapplicable. The case, apparently, was presented to the jury upon the theory that the law of South Carolina as expressed in the case of *Reaves v. Western Union Telegraph Co.,* 110 S. C., 233, 96 S. E., 295, controlled the rights and liabilities of the parties.

The Federal rule and the State rule differ materially in respect to the award of punitive damages, the former restricting the right to recover such damages, the latter being without these qualifying restrictions. Therefore, if the Federal law governs, the State law must yield, and, being superseded, can have no application. The shipment being interstate, the rights and liabilities of the parties are controlled and determined solely by the Acts of Congress, the shipping receipt, which forms the contract between the parties, and the common law as administered and interpreted by the Federal Courts. *Adams Express Co. v. Croninger,* 226 U. S., 491, 33 S. Ct., 148, 153, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257; *Southern Express Co. v. Byers,* 240 U. S., 612, 36 S. Ct., 410, 60 L. Ed., 825.

The Interstate Commerce Act, as amended by the Carmack Amendment and the Cummins Amendment, 49 U. S.

C. A., § 20(11), note, requires common carriers, including express companies, receiving property for transportation in interstate commerce to issue a receipt or bill of lading therefor, and such common carrier or express company "shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it." The present Act also provides that such common carrier "shall be liable to the lawful holder of said receipt, or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it." Interstate Commerce Act, as amended, U. S. Code, Ann. title 49, § 20(11).

Since the passage of the Carmack Amendment, it has been pointed out repeatedly by the Courts that by this enactment Congress intended to take possession of the field of interstate commerce, and thereby supersede all state laws and regulations with reference to it. *Adams Express Co. v. Croninger, supra.*

And it has been held that the statute encompasses all damages due to delay as well as those done to the property itself. Thus in *New York, P. & N. R. Co. v. Peninsula Produce Exchange of Maryland,* 240 U. S., 34, 36 S. Ct., 230, 232, 60 L. Ed., 511, which involved liability for loss of a market due to delay on an interstate movement, the Court said, in speaking of the effect of the Carmack Amendment (49 U. S. C. A., § 20(11), note) :

"The words 'any loss, damage, or injury to such property,' caused by the initial carrier or by any connecting carrier, are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury,' and thus as rendering the former wholly superfluous. It is said that there is a different responsibility on the

part of the carrier with respect to delay from that which exists where there is a failure to carry safely. But the difference is with respect to the measure of the carrier's obligation; the duty to transport with reasonable despatch is none the less an integral part of the normal undertaking of the carrier. And we can gather no intent to unify only a portion of the carrier's responsibility."

The Courts of South Carolina, of course, recognize the binding force of the Federal rule. It was said in *Kristianson v. American Ry. Exp. Co.,* 122 S. C., 528, 115 S. E., 899, 900:

"There is no doubt that the Carmack Amendment (U. S. Comp. St., §§ 8604a, 8604aa) superseded all state laws and state decisions declaratory of common-law liability, in so far as interstate shipments were affected, and substituted in place thereof the liability of the carrier under the common-law as defined and administered in the Federal courts."

This case, being governed by the Federal law as administered and interpreted by the Federal Courts, what, then, is the Federal rule on the subject of punitive damages, and under what circumstances may they be recovered of a corporation for willful or wanton acts of negligence?

A leading case on the subject is that of *Lake Shore, etc., R. Co. v. Prentice,* 147 U. S., 101, 13 S. Ct., 261, 37 L. Ed., 97. Here the United States Supreme Court lays down the rule that in actions for damages against corporations predicated upon the willful, wanton, or oppressive acts of the servant, which acts, as against the servant, would warrant the jury in finding exemplary or punitive damages, such damages cannot be awarded against the master corporation unless it be shown that the corporation either originally authorized the act or subsequently ratified it. The doctrine of the Federal Court, interpreting and applying the common law in regard to punitive damages, is thus stated in *Turman v. Seaboard Air Line Ry.,* 105 S. C., 287, 89 S. E., 655, 656, in which case it was said, citing *Lake Shore, etc., Railroad v. Prentice, supra:* "The federal court has distinctly held that

punitive damages may not be assessed against the master corporation by the mere proof of willfulness in the servant, but that such willfulness must be brought home to the master itself, either by knowledge before the event or by ratification after the event."

Continuing the quotation from the *Turman case:* "The appellant relies on that case to acquit it [the *Prentice case*]. The respondent, however, urges that in matters of evidence, pleading, and procedure the trial court must follow the local and not the federal law, and that by the state law the jury might assess punitive damages. That is true, but this is not such a case. Had there been an effort to bring home to the defendant, other than through the engineer, a willful mind or the ratification of a willful act, then the competency of testimony and the weight of it would have been local and state question. But when the plaintiff rested with proof of willfulness on the part of the engineer, and imputed that to the corporation, the federal law denies such an influence; and in the instant case the federal law must control, for the contract of carriage was interstate, and was dependent upon the Act of Congress regulating passes for employees' families."

It seems clear that the rule is that where an interstate shipment is negligently delayed by a corporate carrier, under circumstances indicating willfulness on the part of the carrier's agents and servants, the company's liability to respond in punitive damages is to be tested by the Federal law, that is, by the common law as administered by the Federal Courts—and that law will not permit recovery of punitive damages unless it is made to appear that the master corporation either initially authorized the acts complained of or ratified them. *DeLoach et al. v. Southern Ry. Co.,* 106 S. C., 155, 90 S. E., 701.

In the case of *Harman v. Southern Ry. Co.,* 106 S. C., 209, 90 S. E., 1023, which was an action for damages, actual and punitive, for injury to a carload of mules, the contract of carriage being interstate, the trial Court held

that the "Acts of Congress, including the Carmack Amendment, do not deprive a shipper of his common-law right of action for punitive damages." In reversing this holding the Court cited the case of *DeLoach v. Southern Ry Co., supra,* as conclusively showing that the ground upon which the presiding Judge based his ruling was erroneous, and held that the carrier's liability for "loss, damage or injury" to goods moving in interstate commerce precludes the recovery of punitive damages against the carrier for mere wrongful acts; and pointed out that there was no testimony to show that the plaintiff was entitled to punitive damages under the Federal statutes, and if not entitled to punitive damages under these statutes he was not entitled to any punitive damages whatever, "for the reason that the Acts of Congress are exclusive in this respect, and no other damages are recoverable, except those allowed by the federal statutes —this being an interstate shipment."

It was held in *Lake Shore, etc., Ry. Co. v. Prentice, supra,* that the authorization and ratification necessary to be shown by proof before the corporation can be bound by the wanton, willful, or oppressive acts of its servants must be authority of or ratification by one who has the power to direct the policies of the corporate master. In the case at bar the acts complained of commence with the alleged negligence of an assistant to the agent of the express company at Camden, S. C., in incorrectly addressing plaintiff's shipment. There is nothing in the record tending to establish that this act, or any other act of any other employee of the defendant complained of by the plaintiff, was authorized or ratified by any official having directory supervision over the policies and management of the defendant. It follows, therefore, that had plaintiff proved indisputably that the delay was a willful act, and the collection of the alleged excessive charge a fraudulent and wanton act on the part of the employees in question, these acts could not be imputed to the defendant. The rights and liabilities

of the parties in this case cannot be measured by the State law.

It is our opinion that the motion of the defendant for the direction of a verdict in its favor as to punitive damages should have been granted, and it was error not to do so.

The respondent insists that the proviso to the Carmack Amendment, which leaves to the holder of the receipt or the bill of lading, which the Act requires to be issued any remedy or right of action which said holder had under existing law, excludes from the operation of the Federal Act cases in which the plaintiff sues to recover punitive damages based upon a wrong, disconnected from any loss or physical injury to the property, although such wrong may have been in connection with an interstate shipment. Under the facts of this case, this position cannot be sustained on the authority of *New York, P. & N. R. Co. v. Peninsula Produce Exchange of Maryland, supra; Adams Express Co. v. Croninger, supra.* And by way of analogy on this point, see *Southern Express Co. v. Byers, supra.* The shipment being admittedly interstate, the measure of the damages is governed by the Federal law, and even though the State of South Carolina permits the recovery of punitive damages against a corporation for breach of a public duty (*Reaves v. Western Union Tel. Co., supra*), the character of the damages in this case is not to be measured by that law, but by the Federal statute and the common law as interpreted by the Federal Courts in the case of an interstate shipment. *Charleston & W. C. Ry. v. Varnville Furn. Co.,* 237 U. S., 597, 35 S. Ct., 715, 59 L. Ed., 1137.

The respondent contends that when the shipment reached Portsmouth and came to rest it was stripped of its interstate character, and that the act of the express agent at that point in demanding more than the proper charges was one wholly disconnected from the interstate character of the shipment, and would form the basis of the right to recover punitive damages under the State law, irrespective of the Federal decisions. We think

this point is not well taken. The rights and liabilities of the parties are governed, as to an interstate shipment, by the Interstate Commerce Act and its amendments (49 U. S. C. A., § 1 *et seq.*), and by the Federal decisions construing it, and the common law, and these authorities are controlling until final delivery to the consignee.

In the case of *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.*, 241 U. S., 190, 196, 36 S. Ct., 541, 60 L. Ed., 948, the shipment had reached its destination and had come to rest, but the Court measured the rights of the parties as to matters transpiring thereafter in connection with the shipment as being governed by the Federal Act. Also, see *Southern Ry. Co. v. Prescott*, 240 U. S., 632, 36 S. Ct., 469, 60 L. Ed., 836.

Section 2 of the Interstate Commerce Act (49 U. S. C. A., § 2) requires the carrier to collect legal charges. The shipper, the consignee, and the carrier are all conclusively presumed to know what the legal rate is. *Louisville & N. R. Co. v. Maxwell*, 237 U. S., 94, 35 S. Ct., 494, 59 L. Ed., 853, L. R. A., 1915-E, 665. The imposition of these charges and their collection are part of the Federal Act. For collecting more than the proper charges the carrier is subject to an action for overcharges, and if it collects less than the proper charges it must, by suit, if necessary, compel the shipper to pay the legitimate charges. *Southern Ry. Co. v. Calhoun Twine Mill*, 176 S. C., 538, 180 S. E., 557; *Southern Railway Co. v. J. C. Herndon*, 175 S. C., 361, 179 S. E., 306. Its action in connection with the charges after the shipment reaches the destination is no less governed by the Federal Act than its transportation of the property itself in interstate commerce. If the carrier improperly performs its duty regarding the charges to be collected, the rights and liabilities of the parties are governed by the Federal law when the shipment is interstate. The collection of the charges, whether correct or incorrect, is an integral part of the carrier's duty in connection with the shipment, and such charges

are not stripped of their interstate character merely because the shipment has come to rest at its destination. It would seem to be illogical to hold otherwise. The delivery to the consignee is just as much a part of the interstate transaction as is the delivery of the parcel by the consignor to the carrier for delivery in the first instance.

The respondent cites the case of *Kristianson v. American Railway Express Co., supra,* as authority for the position that it was the duty of the appellant to inquire of the consignor the value of the suitcase and have him declare the same. In that case, construing the Carmack Amendment, the Court held that the Act should be strictly construed, and that if the carrier desired the protection of the act it should bring itself precisely within its terms in order to limit its liability. The *Kristianson case,* however, differs in its facts from the case at bar, and may be clearly distinguished. In the *Kristianson case* the "shipper was not given a receipt containing the provisions limiting liability"; the "shipper called attention to the fact that the package consigned was valuable"; and "the receipt given did not restrict liability; plaintiff could not by reading it ascertain the terms of the shipment and discover the limitation of liability. It declared no value, contained no limitations, and made no reference to any other document."

In the instant case the shipper was given a receipt containing provisions limiting liability. The defendant's attention was not called to the fact that the package consigned was valuable. The receipt did restrict liability and the shipper could by reading the receipt ascertain the terms of the shipment and discover the limitations of liability. While the shipper gave no valuation nor was asked for any, the receipt issued to him contained the following agreement:

"The shipper agrees that the company shall not be liable in any event for more than Fifty Dollars for any shipment of 100 pounds or less," and "unless a greater value is declared and stated herein, the shipper agrees that the value of

the shipment is as last above set out, and that the liability of the company shall in no event exceed such value."

The receipt issued showed that the suitcase weighed thirty pounds.

The Court held, in *Adams Express Co. v. Croninger, supra:*

"That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50 unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission. That presumption is strengthened by the fact that across the top of this bill of lading there was this statement in bold type: 'This company's charge is based upon the value of the property, which must be declared by the shipper.' "

Also, see, *American Railway Express Co. v. Levee*, 263 U. S., 19, 44 S. Ct., 11, 68 L. Ed., 140; *American Railway Express Co. v. Lindenburg*, 260 U. S., 584, 43 S. Ct., 206, 67 L. Ed., 414.

Acceptance of the receipt, under the circumstances stated, was sufficient to make its provisions binding upon plaintiff. *New York Central & Hudson River R. R. Co. v. Beaham*, 242 U. S., 148, 37 S. Ct., 43, 61 L. Ed., 210; *American Express Co. v. United States Horse Shoe Co.*, 244 U. S., 58, 37 S. Ct., 595, 61 L. Ed., 990. Plaintiff is conclusively presumed to have known the provisions of the tariff. The contract was plainly one for a limited liability within the provisions of the law, and recovery must be limited accordingly. *Tribble v. Southern Express Co.*, 111 S. C., 31, 96 S. E., 712.

The case of *American Railway Express Company v. Estroff*, 159 Ga., 58, 125 S. E., 40, cited by the respondent, is inapposite. The facts are not analogous.

The judgment of the lower Court is reversed, and the case remanded for entry of judgment in favor of the defendant as to punitive damages, under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concurs in result.