508 S.E.2d 34

**UNITED PARCEL SERVICE, Respondent,**

v.

**S.C. TEES, INC., Appellant.**

No. 2891.

Court of Appeals of South Carolina.

Heard Sept. 1, 1998.

Decided Oct. 26, 1998.

Rehearing Denied Dec. 17, 1998.

H. Clayton Walker, Jr., of Swagart & Walker, of Columbia, for appellant.

Val H. Stieglitz, of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for respondent.

STILWELL, Judge:

United Parcel Service brought this breach of contract action against South Carolina Tees after S.C. Tees withheld payment on its account claiming UPS misdelivered a shipment and collected the wrong form of payment. Both parties moved for summary judgment and the trial court granted UPS's motion. We affirm.

UPS is an interstate common carrier that transports packages for hire pursuant to a federal tariff. S.C. Tees is a South Carolina business that manufactures sportswear and maintains a shipping account with UPS. For many years, S.C. Tees shipped merchandise C.O.D. to customers in other states via UPS.

In November 1994, S.C. Tees made two C.O.D. shipments to Ken Pohsatt in Jackson Heights, New York. Prior to shipment, S.C. Tees did not verify the creditworthiness of Pohsatt. The shipping tickets contained instructions to collect "cash or cashier's check." UPS delivered the packages to the address designated on the C.O.D. tags. Upon delivery, UPS accepted two certified checks that totaled $19,195.20. UPS delivered these checks to S.C. Tees. Before depositing the checks, S.C. Tees learned the checks might be forgeries. Rather than depositing the certified checks, S.C. Tees returned them to UPS. Then S.C. Tees set off $19,195.20 on its account with UPS.

In granting UPS's motion for summary judgment, the trial court ruled that federal law applied, that UPS had the right to collect certified checks, and that UPS properly delivered the goods to the designated address.

## I.

■ This dispute involves the interstate shipment of goods. The operation and effect of a contract between a shipper and common carrier for an interstate shipment is governed by federal law. *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Huddy v. Railway Express Agency*, 181 S.C. 508, 513, 188 S.E. 247, 249 (1936) (In an

interstate shipping contract, the "rights and liabilities of the parties are controlled and determined solely by the Acts of Congress, the shipping receipt, which forms the contract between the parties, and the common law as administered and interpreted by the federal courts.").

This federal law is a framework of federal statutes known collectively as the Carmack Amendment, 49 U.S.C. §§ 14706(a)(1), (c) (1997).[1] While the statutes, on their face, address only rates and liability for loss or damages to packages, the cumulative effect created a unique body of both federal statutory and common law in the areas of interstate package shipments. *George R. Hall, Inc. v. Superior Trucking Co.*, 514 F.Supp. 581 (N.D.Ga.1981). The legislation and subsequent development of federal common law has been driven by the goal of promoting interstate commerce by creating a uniform law governing the liability of interstate carriers. *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936).

■ On appeal, S.C. Tees asserts that its breach of contract and negligence claims are not preempted by federal law. We disagree.

According to our supreme court the language of the Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Huddy*, 181 S.C. at 514, 188 S.E. at 249 (quoting *New York P. & N. R.R. v. Peninsula Produce Exch.*, 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916)).

There is no doubt that the Carmack Amendment superseded all state laws and state decisions declaratory of common-law liability, in so far as interstate shipments were affected, and substituted in place thereof the liability of the carrier

---

1. State courts have concurrent jurisdiction over claims controlled by the Carmack Amendment. *Missouri, Kan. & Tex. Ry. v. Harris*, 234 U.S. 412, 421, 34 S.Ct. 790, 58 L.Ed. 1377 (1914); 49 U.S.C. § 14706(d) ("A civil action under this section may be brought against a delivering carrier in district court ... or in a State court."). Therefore, a case such as this against a common carrier asserting liability for loss or damage may properly be heard in the South Carolina circuit court on the merits, applying federal law.

under the common-law as defined and administered in the Federal courts.

*Kristianson v. American Ry. Express Co.,* 122 S.C. 528, 531, 115 S.E. 899, 900 (1921). "The [Carmack Amendment is] comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express,* 299 U.S. at 29, 57 S.Ct. 73 (reversing the South Carolina Supreme Court and finding liability governed by the provisions of the applicable tariff); *see McCall–Thomas Eng'g Co. v. Federal Express Corp.,* 81 F.3d 28, 30 n. (4th Cir.1996) ("Claims involving shipments in interstate commerce by air carriers are governed by federal law."). Clearly, the Carmack Amendment and case law interpreting it apply here.

## II.

Under the Carmack Amendment and the judicial decisions interpreting it, the contract between the shipper and the carrier consists of the bill of lading and the tariff. *Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982); *Carr v.. United Van Lines, Inc.,* 289 S.C. 194, 198, 345 S.E.2d 734, 736 (Ct.App.1986) (A contract for carriage is "subject to the provisions of all its applicable tariffs lawfully published and filed.").

In this case, the UPS tariff provision relating to C.O.D. packages stated:

Consignee's Checks in Payment of C.O.D.s: Unless instructions to collect cash only are written on the C.O.D. tag, the carrier will accept a check issued by or on behalf of the consignee. When instructions to collect cash are written on the C.O.D. tag, the carrier reserves [the] right to accept cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. All checks (including cashier's check and certified checks) and money orders tendered in payment of C.O.D.s will be accepted by the carrier at shipper's risk including, but not limited to, risk of nonpayment and forgery, and carrier shall not be liable upon any such instrument.

The UPS C.O.D. tag stated:

"Cash Only" must be entered on instructions line and box checked on receipt if driver is not authorized to accept

check issued by or on behalf of consignee. If "Cash Only," UPS reserves right to collect cash or cashier's check, certified check, money order or similar instrument. All payments collected at shipper's risk.

 Under UPS's C.O.D. tag and tariff, UPS was entitled to accept a certified check in lieu of cash or a cashier's check. Both state that where instructions are to collect "cash only," then UPS reserves the right to collect "cash or cashier's check, certified check, money order or similar instrument." Therefore, S.C. Tees's instruction for UPS to collect "cash or cashier's check" included a certified check. *See Metal Marketplace, Inc. v. United Parcel Serv., Inc.,* 733 F.Supp. 976, 981 (E.D.Penn.1990) ("[A]bsent an express provision to the contrary, the term 'cash' in the context of a routine commercial contract includes a cashier's check. This conclusion is particularly compelling when, as in the instant case, the term is expressly defined to include cashier's checks in the contracting party's public tariff.").

If S.C. Tees had not written in instructions to accept "cash or cashier's check" then UPS could have collected a personal check as payment on the C.O.D. shipments. Under the applicable tariff and tag, the shipper's instruction to accept "cash only" prevented UPS from accepting a personal check. *See Center Video Indus. Co. v. Roadway Package Sys., Inc.,* 90 F.3d 185, 189–90 (7th Cir.1996) (holding Roadway liable where it accepted a personal check stamped "certified funds" because the filed tariff stated that "cash only" for C.O.D. shipments meant that Roadway could accept "cash, a cashier's check, a certified check, a money order, or a similar instrument" but not an ordinary payable on demand check).

UPS is not liable because the certified check turned out to be invalid. *See Comark, Inc. v. United Parcel Serv., Inc.,* 701 F.Supp. 641, 646 (N.D.Ill.1988) (in case decided on other grounds, court observed that carrier was within its authority to accept what appeared to be a cashier's check, later determined to be forged, because "to hold otherwise would call on UPS drivers to be moonlighting law students, skilled in the arcane mysteries of the UCC"). Therefore, in accepting what appeared to be facially valid certified checks, UPS fully per-

formed under the terms of the C.O.D. contract with S.C. Tees. *See McCall–Thomas Eng'g*, 81 F.3d at 30–31.

## III.

■ S.C. Tees claims that the tariff does not reflect the terms of the shipping agreement reached by the parties, asserting in essence that the parties modified the tariff and formed their own contract. We disagree.

In the past, S.C. Tees was made aware of several instances where fraudulent certified checks had been collected by UPS in payment of C.O.D. orders. These events led to discussions between the parties concerning the prevention of similar losses in the future. According to S.C. Tees, a UPS supervisor and other UPS employees instructed S.C. Tees to enter collection instructions on the UPS shipping tag for "cash or cashier's check." UPS would then honor these instructions and only accept currency or cashier's check as payment.

The parties, however, cannot depart from the terms of the bill of lading and the tariff. *See American Eye Way, Inc. v. Roadway Package Sys., Inc.*, 875 F.Supp. 820 (S.D.Fla.1995) (A shipper's claims against a carrier for negligence and misrepresentation for allegedly falsely representing during contract negotiations that it would accept only cash for C.O.D. packages whenever so instructed were preempted by the Carmack Amendment.).

> [T]he parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations.

*Georgia, Fla., & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

## IV.

■ S.C. Tees also argues UPS negligently misdelivered the goods. UPS presented uncontested testimony that UPS's obligation is to deliver to the designated address, not a specific person. *See Caporicci Footwear, Ltd. v. Roadway Package*

*Sys., Inc.*, 894 F.Supp. 265, 268 (E.D.Va.1995) (Delivering goods to appropriate address held sufficient.). Additionally, the loss S.C. Tees claims it sustained arose from the form of the instrument UPS collected, not the person by whom payment was made.

**AFFIRMED.**

CURETON and CONNOR, JJ., concur.