NEW YORK, PHILADELPHIA & NORFOLK RAIL-
    ROAD COMPANY, PLAINTIFF IN ERROR, *v.*
    PENINSULA PRODUCE EXCHANGE OF MARY-
    LAND.

ERROR TO THE COURT OF APPEALS OF THE STATE OF
MARYLAND.

No. 137.  Argued December 15, 16, 1915.—Decided January 24, 1916.

The Carmack Amendment of June 29, 1906, extends to failure to trans-
    port with reasonable despatch; and under it there can be a recovery
    from the initial carrier for loss, damage or injury for such failure
    although on the line of the connecting carrier.
A subsequent legislative interpretation of a statute is entitled to great
    weight.
A condition of the tariff filed with the Interstate Commerce Commis-
    sion that the carrier was not bound to transport on a particular train
    or vessel to arrive at a particular market or otherwise than with rea-
    sonable despatch does not relieve the carrier from liability under the
    Carmack Amendment for not delivering with reasonable despatch,
    although the delay may have been on line of connecting carrier.
In this case the state court did not deny to the carrier any Federal right
    in charging that the liability for unreasonable delay in delivering
    a carload of berries was the amount of the decline in value, due to
    the delay at the place of destination, without stating the limitation
    in the filed tariff that the damages should not exceed the value at the
    time and place of shipment, the amount awarded being less than
    such value.
122 Maryland, 215, affirmed.

THE facts, which involve the construction and applica-
tion of the Carmack Amendment to damages for delay,
are stated in the opinion.

*Mr. Henry Wolf Biklé* and *Mr. Frederic D. McKenney*
for plaintiff in error:

The Carmack Amendment does not impose upon the
"initial carrier" liability for delay occurring on the line
of its connection without physical damage to the property,

The plaintiff below is not entitled to recover because

its shipment failed to arrive in time for the market of May 28, when the regulations under which the shipment moved were published in tariffs duly on file with the Interstate Commerce Commission, and specifically provided that: "No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement endorsed hereon."

In support of these contentions, see *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491; *Almand* v. *Railroad*, 95 Georgia, 775; *A., T. & S. F. Ry.* v. *Robinson*, 233 U. S. 173; *Balt. & Ohio R. R.* v. *United States*, 215 U. S. 481; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97; *Byers* v. *Southern Exp. Co.*, 165 N. Car. 542; *Chi. & Alton R. R.* v. *Kirby*, 225 U. S. 155; *C., R. I. & P. Ry.* v. *Cramer*, 232 U. S. 490; *Detroit &c. Ry.* v. *McKenzie*, 43 Michigan, 609; *East Tenn. &c. Ry.* v. *Johnson*, 85 Georgia, 497; *Fort Smith &c. R. R.* v. *Awbrey*, 39 Oklahoma, 270; *Frey* v. *N. Y. Central R. R.*, 100 N. Y. Supp. 225; *G. H. & S. A. Ry.* v. *Wallace*, 223 U. S. 481; *Great Nor. Ry.* v. *O'Conner*, 232 U. S. 508; *Gulf &c. R. R.* v. *Nelson*, 139 S. W. Rep. 81; *Matter of Bills of Lading*, 14 I. C. C. 346; *Johnson* v. *M., K. & T. Ry.*, 95 N. Y. Supp. 182; *Kansas City So. Ry.* v. *Carl*, 227 U. S. 639; *Klass Commission Co.* v. *Wabash R. R.*, 80 Mo. App. 164; *Kramer & Co.* v. *C., M. & St. P. Ry.*, 101 Iowa, 178; *Leonard* v. *Railway Co.*, 54 Mo. App. 293; *M., K. & T. Ry.* v. *Carpenter*, 152 Tex. Civ. App. 585; *M., K. & T. Ry.* v. *Harriman*, 227 U. S. 657; *Myrick* v. *Mich. Cen. R. R.*, 107 U. S. 102; *Norfolk Truckers Exchange* v. *N. S. Ry. Co.*, 116 Virginia, 466; *Pecos &c. Ry.* v. *Coxe*, 150 S. W. Rep. 265; *Penna. R. R.* v. *Clark*, 118 Maryland, 514; *Penna R. R.* v. *Morrisdale Coal Co.*, 230 U. S. 304; *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318; *Railroad Co.* v. *Pratt*, 22 Wall. 123; *Robinson* v. *Balt. & Ohio R. R.*, 222 U. S. 506; *Shaffer* v. *Chicago, R. I. & P. Ry.*, 21 I. C. C. 8; *Southern Pacific*

*Co.* v. *Lyon*, 66 So. Rep. 209; *Tex. & Pac. Ry.* v. *Abilene Oil Co.*, 204 U. S. 426; *Wabash R. R.* v. *Pearce*, 192 U. S. 179.

*Mr. James E. Ellegood* for defendant in error.

Mr. Justice Hughes delivered the opinion of the court.

On May 26, 1910, The Peninsula Produce Exchange of Maryland delivered to the New York, Philadelphia & Norfolk Railroad Company at Marion, Maryland, a carload of strawberries for transportation to New York City. The conditions of the transportation were set forth in the bill of lading issued by the railroad company. The property was delivered at destination some hours later than the customary time of arrival and this action was brought to recover damages for the failure to transport and deliver with reasonable despatch. Judgment in favor of the shipper was affirmed by the Court of Appeals of Maryland. 122 Maryland, 215.

The plaintiff in error, in its brief, states that "the questions involved are two,"—

"1. Does the Carmack Amendment impose on the 'initial carrier' liability for delay occurring on the line of its connection without physical damage to the property?

"2. Was the plaintiff entitled to recover because its shipment failed to arrive in time for the market of May 28th, when the regulations under which the shipment moved were published in tariffs duly on file with the Interstate Commerce Commission, and specifically provided: 'No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable despatch, unless by specific agreement endorsed hereon' ?"

The first question, arising from the fact that it did not appear that the delay occurred on the line of the initial

carrier (the defendant) was raised by an unsuccessful demurrer to the declaration, and both questions were presented by prayers for instructions which were denied.

The amendment of § 20 of the Interstate Commerce Act, known as the Carmack Amendment (Act of June 29, 1906, c. 3591, § 7, 34 Stat. 584, 595), provides "that any common carrier . . . receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to· the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier . . . to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier . . . from the liability hereby imposed."

We need not review at length the considerations which led to the adoption of this amendment. These were stated in *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, 199–203. It was there pointed out that along with singleness of rate and continuity of carriage in through shipments there had grown up the practice of requiring specific stipulations limiting the liability of each separate company to its own part of the through route, and, as a result, the shipper could look to the initial carrier for recompense only "for loss, damage or delay" occurring on its own line. This "burdensome situation" was "the matter which Congress undertook to regulate." And it was concluded that the requirement that interstate carriers holding themselves out as receiving packages for destinations beyond their own terminal should be compelled "as a condition of continuing in that traffic to obligate themselves to carry to the point of destination, using the lines of connecting carriers as their own agencies," was within the power of Congress. The rule, said the court in defining the purpose of the Carmack Amendment, "is adapted to

secure the rights of the shipper by securing unity of transportation with unity of responsibility." And, again, we said in *Adams Express Company* v. *Croninger*, 226 U. S. 491, that this legislation embraces "the subject of the liability of the carrier under a bill of lading which he must issue."—"The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." *Id.*, p. 506.

It is now insisted that Congress failed to accomplish this paramount object; that while unity of responsibility was secured if the goods were injured in the course of transportation or were not delivered, the statute did not reach the case of a failure to transport with reasonable despatch. In such case it is said that, although there is a through shipment, the shipper must still look to the particular carrier whose neglect caused the delay. We do not think that the language of the amendment has the inadequacy attributed to it. The words "any loss, damage, or injury to such property" caused by the initial carrier or by any connecting carrier are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural in view of the general purpose of the statute, to take the words "to the property" as limiting the word "damage" as well as the word "injury" and thus as rendering the former wholly superfluous. It is said that there is a different responsibility on the part of the carrier with respect to delay from that which exists where there is a failure to carry safely. But the difference is with respect to the measure of the carrier's obligation; the duty to transport with reasonable despatch is none the less an integral part of the normal undertaking of

the carrier. And we can gather no intent to unify only a portion of the carrier's responsibility. Further, it is urged, that the amendment provides that the initial carrier may recover from the connecting carrier "on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property," and this, it is said, shows that the 'loss, damage, or injury' described is that which may be localized as having occurred on the line of one of the carriers and therefore should be limited to physical loss or injury. But we find no difficulty in this, as the damages required to be paid by the initial carrier are manifestly regarded as resulting from some breach of duty, and the purpose is simply to provide for a recovery against the connecting carrier if the latter, as to its part of the transportation, is found to be guilty of that breach. The view we have expressed finds support in the explicit terms of the act of January 20, 1914, c. 11, 38 Stat. 278, which provides "that no suit brought in any state court of competent jurisdiction against a railroad company . . . to recover damages for delay, loss of, or injury to property received for transportation by such common carrier under section twenty of the Act to regulate commerce . . . shall be removed to any court of the United States where the matter in controversy does not exceed, exclusive of interest and costs, the sum or value of $3,000." If the language of § 20 can be regarded as ambiguous, this legislative interpretation of it as conferring a right of action for delay, as well as for loss or injury to the property in the course of transportation is entitled to great weight.[1] *Alexander*

---

[1] The language of the Carmack Amendment has been construed in various decisions by state courts as embracing damages for delay. *Fort Smith R. R. Co.* v. *Aubrey*, 39 Oklahoma, 270; *Southern Pacific Co.* v. *Lyon* (Miss.), 66 So. Rep. 209; *Pecos Railway Co.* v. *Cox*, 150 S. W. Rep. (Texas) 265; *Norfolk Exchange* v. *Norfolk Southern R. R.*

v. *Mayor*, 5 Cranch, 1, 7, 8; *United States* v. *Freeman*, 3 How. 556, 564, 565; *Cope* v. *Cope*, 137 U. S. 682, 688.

The second question, as stated, is sought to be raised under the stipulation of the bill of lading (being one of the conditions filed with the tariffs under the Interstate Commerce Act) that the carrier is not bound to transport "by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable despatch." See *Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Atchison, Topeka & Santa Fe Rwy. Co.* v. *Robinson*, 233 U. S. 173. But the argument upon this point is not addressed to the issue, as recovery was not sought, or permitted, except for a failure to transport with reasonable despatch. The declaration alleged that the berries "were to be transported with safety, and with reasonable despatch, and delivered . . . in safe condition and with reasonable diligence"; that the defendant, or its connecting lines, did not "transport or deliver the same with reasonable despatch"; and that the damage was due to their failure to use "due and reasonable diligence." The court instructed the jury that it became the duty of the defendant and all connecting lines "to use reasonable care, diligence and exertion in forwarding and transporting and delivering" the berries, and that if the jury should believe that the defendant and the connecting lines, or any of them, "did not use such care, diligence and exertion" and that by reason of the failure so to do the berries arrived "too late for the market of the day on which they would have arrived if they had been forwarded and transported with such care, diligence and exertion, and that the plaintiff thereby sustained loss, then their verdict should be for the plaintiff." As the Court of Appeals of Maryland said, the ground of the

*Co.*, 116 Virginia, 466. *Contra, Byers* v. *Southern Express Co.*, 165 N. Car. 542.

action was "the failure to carry with reasonable despatch and the loss of marketability is mentioned as the element of damage." That is, the reference to the market said to have been lost was merely for the purpose of calculating damages which were sought solely because of lack of reasonable diligence and not upon the allegation of any added duty with respect to a particular train or market. The stipulation invoked does not attempt to limit the duty of the carrier to transport with reasonable despatch, and we are not called upon to consider its effect in any other aspect.

The instructions, however, permitted the jury to award as damages the amount of the decline in value, due to the delay, at the place of destination, without stating the limitation set forth in the tariff of the plaintiff in error as filed; and this tariff with the accompanying conditions, duly offered in evidence, was excluded. It was conceded by the Court of Appeals that these rulings were erroneous, but the court found that they worked no harm to the plaintiff in error. The condition in the bill of lading, and in the filed tariff provided that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence." Treating the rate charged for the transportation as based upon assent to this provision, the Court of Appeals construed the stipulation not as changing the basis of liability but as limiting the amount of the recovery in any event to the value of the property

at the time and place of shipment, no other value having been agreed upon. *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *Boston & Maine R. R. Co.* v. *Hooker*, 233 U. S. 97; *George N. Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278. It appeared from the evidence that the berries were sold in New York City at an average price of six and one-half cents a quart. It was also proved that the decline in value due to the delay was from two to three cents a quart. The jury gave a verdict for $180.48, which included $153.60, principal, and $26.88 interest. That is, the jury gave damages at the rate of two cents a quart for the 240 crates (7680 quarts) shipped. The court held that it could not be said, as the defendant contended, that there was no proof of actual damage from the delay; and that, so far as the maximum liability fixed by the filed tariff was concerned, the court was justified in taking the value of the berries at the time and place of shipment as being at least equal to the two cents a quart allowed. Upon this point the Court of Appeals said: "It may be judicially assumed that their value at the time and place of shipment was at least equal to the two cents per quart which the jury allowed as damages, and in the view we have taken of the case no just purpose would be served in reversing the judgment and subjecting the parties to the expense of a new trial." That is to say, upon the facts as the state court found them to be, the agreed maximum of liability as stipulated was not exceeded.

We cannot say, in the light of the evidence, that the state court denied to the plaintiff in error any Federal right in holding as it did with respect to the amount of the value of the berries at the time and place of shipment, and in this view we are unable to conclude that in disposing of the Federal questions there was any error which would require, or justify, a reversal.

*Judgment affirmed.*