PINKUS v. REILLY.

No. 9518.

United States Court of Appeals
Third Circuit.

Argued May 3, 1948.

Decided Oct. 25, 1948.

O'CONNELL, Circuit Judge, dissenting.

Hubert H. Margolies, of Washington, D. C., for appellant.

Bernard Segal, of Philadelphia, Pa., for appellee.

Before McLAUGHLIN and O'CONNELL, Circuit Judges, and RODNEY, District Judge.

RODNEY, District Judge.

This matter arises upon an appeal by Louis A. Reilly, United States Postmaster of the City of Newark, New Jersey, from a summary judgment in favor of the appellee, Joseph J. Pinkus, trading as American Health Aids Company and also as Energy Food Center.

Pinkus, on June 1, 1945, instituted suit in the court below against Reilly to enjoin the carrying out of a "fraud order" issued by the Postmaster General to Reilly forbidding the latter to deliver mail to or cash money orders drawn in favor of Pinkus or certain of his trade name companies, and the officers and agents thereof as such.

The "fraud order" was issued by the Postmaster General after an investigation of the appellee's business and upon the recommendation of the Solicitor of the Post Office Department who conducted a hearing in which both the Government and Pinkus participated. The Solicitor found from the hearing, as appears in his memorandum to the Postmaster General, that Pinkus was engaged in conducting a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises, in violation of the laws of the United States.[1] It was upon this ground that the Postmaster General issued his "fraud order" to Reilly on May 7, 1945.

On June 24, 1947 the court below denied a motion for summary judgment by Reilly and entered judgment for permanent injunction in favor of Pinkus upon his motion for summary judgment.[2] The court below had before it the complaint and answer and the exhibits thereto, which include a transcript of the hearings before the Solicitor, the Solicitor's memorandum to the Postmaster General, the Postmaster General's "fraud order" to Reilly, copies of the allegedly false advertisements, a copy of a suggested diet, and excerpts from certain medical books. See Pinkus v. Reilly, D.C.N.J., 71 F.Supp. 993.

The court below properly based its decision upon the administrative record

---

[1] R.S. §§ 3929 and 4041, 39 U.S.C.A. §§ 259 and 732.

[2] Appellant Reilly had been restrained from carrying out the "fraud order" under a temporary injunction issued by the court below on July 23, 1945.

alone. See Jarvis v. Shackelton Inhaler Co., 6 Cir., 1943, 136 F.2d 116, 118, and the question could properly be disposed of upon a motion for summary judgment.[3]

■ While one of the grounds for appeal was that the Postmaster General was an indispensable party and the proceeding could not be maintained in his absence, and while there had been a conflict between circuits upon this question,[4] since this appeal was taken the question has been resolved by the Supreme Court in Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, where it is held that the Postmaster General is not an indispensable party. Counsel concede that no further discussion of this point is necessary.

Another point briefed by the plaintiff-appellee on appeal is that the two statutes involved violate various provisions of the Federal Constitution. Subsequent to the filing of the brief, however, this point has also been disposed of by the Supreme Court in Donaldson v. Read Magazine, Inc., 1948, 333 U.S. 178, 189–192, 68 S.Ct. 591, wherein the constitutionality of the two statutes is upheld. We therefore deem it unnecessary to consider this phase of the case, since all of the plaintiff-appellee's arguments are answered by the Supreme Court in the cited case.

The two statutes involved[5] generally provide that the Postmaster General, upon evidence satisfactory to him that any person is conducting a scheme for obtaining money through the mails by means of false or fraudulent representations, may instruct postmasters to stamp any letters, including registered letters, or mail matter directed to any such person as "fraudulent" and to return all such mail matter to the postmaster at the office at which it was originally mailed and may forbid any postmaster from paying to any such person any postal money orders drawn to his order. The "fraud order" issued to Reilly against Pinkus in the instant case contained these instructions.

■ Subsequent to this appeal by Reilly the "fraud order" has been revoked by the Postmaster General insofar as it applies to the Energy Food Center, and its officers and agents as such. This revocation has the effect of making the "fraud order" applicable only to the American Health Aids Company, and its officers and agents as such, at Newark, New Jersey. Such a modification of a "fraud order" is within the scope of the power and duty of the Postmaster General. Donaldson v. Read Magazine, 1948, 333 U.S. 178, 184, 68 S.Ct. 591.

The plaintiff-appellee, Pinkus, trading as American Health Aids Company, has been engaged for a number of years in the business of selling and distributing, through the mails and in his store at Newark, New Jersey, a formula known as "Dr. Phillips' Kelp-I-Dine Reducing Plan." This plan is represented generally as a method of reducing excess fat at the rate of 3 to 5 pounds a week by merely cutting down on fatty and starchy foods and taking one-half teaspoonful of "Kelp-I-Dine" daily with any meal, preferably breakfast. The plan has been advertised in newspapers, circulars and magazines and over radio broadcasting stations.

There was placed in evidence at the hearing before the Solicitor certain advertisements of the plan taken from various issues of newspapers and magazines of national circulation and from circulars which were sent through the mails. Radio scripts used to advertise the plan at one radio station were also before the Solicitor. The gist of these advertisements and scripts is that one can lose from 3 to 5 pounds a week without any exercise or reducing drugs and by simply following the "Kelp-I-Dine Reducing Plan." It is stated that one can eat as usual and not cut out fatty, starchy foods but merely cut down on them. The plan is said to be the safe, lazy way to reduce without starving or strain. Some of the advertisements allege that "doctors approve" of the plan, while

---

[3] Wawa Dairy Farms, Inc. v. Wickard, 3 Cir., 1945, 149 F.2d 860, 864; Fields v. Hannegan, App.D.C., 1947, 162 F.2d 17, 18, certiorari denied 332 U.S. 773, 68 S. Ct. 88.

[4] See cases collected in 158 A.L.R. 1126, 1139–1143.

[5] R.S. § 3929, 39 U.S.C.A. § 259 and R.S. § 4041, 39 U.S.C.A. § 732.

others declare that "users say doctors approve."

The radio scripts contain statements that age makes no difference in the success of the plan, nor does any ailment such as diabetes or rheumatism.

It is represented in the advertisements that no stringent diet is necessary and that "Kelp-I-Dine" is a purely vegetable product containing minerals (including essential iodine) which satisfy hidden hunger, the false hunger that makes people overeat and add weight.

Each of the advertisements contains an order blank with an offer of refund, labeled as a money-back guarantee, to any dissatisfied customer and laudatory statements from satisfied customers appear in great number in the advertisements.

The purchaser of the "Kelp-I-Dine" product and plan receives two ounces of "Kelp-I-Dine" and a "suggested menu for one day" titled "Dr Phillips' Kelpidine Reducing Plan." The label on the container of "Kelp-I-Dine" states that it is a "Pacific Kelp" and a "nutritional supplement for increasing daily intake of iodine from ocean vegetation" and that the daily dose of one-half teaspoonful contains .3 milligrams of "food iodine," which amount is "300% of Minimum Human Daily Requirements." The label has the approval of the Food and Drug Administration.

At the hearing before the Solicitor the Government introduced testimony · from two expert medical witnesses and the plaintiff-appellee introduced testimony from one such witness. The Solicitor's findings as contained in his memorandum· are based solely upon the testimony of these three witnesses for the purpose of determining the therapeutic value of plaintiff-appellee's product and treatment.

The Solicitor concluded that although the advertisements led one to believe that Kelp-I-Dine is valuable in the treatment of obesity, actually it is valueless for such purpose; that any reduction in weight which might occur from following the plan would not come about easily, naturally, or as otherwise represented in the advertisements; and that one who follows the suggested diet would not be able to "eat plenty" nor as he "usually does," as advertised by the appellee.

This case involves the somewhat diverging doctrines set forth in American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S.Ct. 33, 47 L.Ed. 90, and Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 60 L. Ed., 511.

The McAnnulty.case, as we understand it, holds that whenever the efficacy of an advertised treatment or method is a matter upon which opinions may honestly differ and which cannot be factually and definitely established, then the Postmaster General has no power under the two statutes here involved to issue a "fraud order" even though he and a great majority of intelligent people may be of the honest opinion that the treatment or method is inefficacious. In Rood v. Goodman, 5 Cir., 1936, 83 F.2d 28, 31, it was declared to be beyond the power of a government official under the two statutes involved to prevent the dissemination of a product or plan merely because he has no belief, qua belief, in such plan.

In the McAnnulty case the conclusion was based upon questions raised by demurrer. The court carefully preserved the right of showing factual violations of the law at a later stage.

The case of Leach v. Carlile, supra, [258 U. S. 138, 42 S.Ct. 228] did not concern at all the question of whether the product had some value or was entirely worthless, but solely whether the appellant there was advertising his product as such a panacea or cure-all article as to perpetrate a fraud upon the public. The court, in discussing the McAnnulty decision, said "Without considering whether such a state of facts would bring the case within the decision cited, it is sufficient to say that the question really decided by the lower courts was, not that the substance which appellant was selling was entirely worthless as a medicine, as to which there was some conflict in the evidence, but that it was so far from being the panacea which he was advertising it through the mails to be, that by so advertising it he was perpetrating a fraud upon the public. * * *"

It was the McAnnulty doctrine that the court below relied upon in granting the motion by Pinkus for a summary judgment enjoining Reilly from carrying out the "fraud order." The court below held that the effectiveness of the plan, the severity of the diet, and the inherent values of kelp as employed in the "Kelp-I-Dine" plan are not such matters as are subject of proof as an ordinary· fact and there is therefore no exact standard of absolute truth by which to prove the assertions in the advertisements false and a fraud.

The Government urges upon this court, and urged upon the court below, that the doctrine of Leach v. Carlile should govern. The court below rejected this contention upon the ground that there had been no assertion by the plaintiff-appellee, through advertising or otherwise, that his reducing plan is a cure-all panacea, or that each and every user will experience equally beneficial or satisfactory results, and that the fraud order did not appear to have been issued on the basis of any such finding. It is the latter reason, we think, which makes Leach v. Carlile inapplicable. The record is entirely barren of any charge by the Government that the "Kelp-I-Dine" advertisements raise hopes of a cure-all panacea. There is no indication in the record at all that the Government intended to make any such charge and there is no substantial evidence to support such a finding. The basis for the "fraud·order" was that kelp is valueless for the treatment of obesity while the advertisements lead one to believe that it is valuable for such purpose. The Postmaster· General allegedly found as an ordinary fact that kelp has no value for the specified purpose, but there is nothing to indicate that he found the advertisements asserting cure-all results.

■ The duty of the court below was to review the evidence before the Postmaster General and the findings based thereon. Where the basis for the issuance of a "fraud order" is that the product or plan is entirely valueless, as a matter of fact, as distinguished from opinion, for the purposes advertised, we think such question is the only matter to be reviewed by the courts. In such case, if the value of a product or plan was not proved factually and if there is an honest difference of opinion as to whether it has some value, then we deem it to be without the province of a reviewing court to determine an entirely different question, viz., whether the product or plan is so far from being the panacea that it is advertised to be that by so advertising it there is perpetrated a fraud upon the public.

■ The power of the court below to review the action of the Postmaster General in issuing the "fraud order" extends no further than to determine whether there is substantial factual evidence to support the Postmaster General's conclusion that kelp is valueless in the treatment of obesity and whether the findings were fairly arrived at so that it cannot justly be said to be palpably wrong and therefore arbitrary. Donaldson v. Read Magazine, 1948, 333 U.S. 178, 186, 189, 68 ·S.Ct. 591; Jarvis v. Shackelton Inhaler ·Co., 6 Cir., 1943, 136 F.2d 116, 119; Leach v. Carlile, 1922, 258 U.S. 138, 140, 42 S.Ct. 227, 60 L. Ed. 511.

The court below recognized and agreed with the substantial evidence doctrine, Pinkus v. Reilly, D.C.N.J., 71 F. Supp. 993, 994, but found that there was no substantial evidence in fact, and could be none, to support the order, because the matters involved are not subject of proof as an ordinary fact, but rather are matters upon which opinions, as distinguished from facts, may honestly differ. The sole duty of this court on appeal is to determine ·whether the lower court was correct.

■ We feel constrained to affirm the judgment of the court below upon the ground that there was no substantial ·evidence in fact, as distinguished from opinion, to support the findings of the Postmaster General. We would not be understood to say that the value of the plaintiff-appellee's plan and product is not subject to proof as an ordinary fact nor that scientific research and tests may not disclose factually and definitely the efficacy of a particular plan or product. We do say that the evidence upon which the Post-

master General acted was not factual evidence but solely in the nature of opinion evidence. If there be ordinary factual evidence of the value of the product and plan here involved it was not placed before the Postmaster General. The proceedings in the Post Office Department do not disclose that any scientific test or research was made with the appellee's product or plan or that the opinions of the medical experts were founded upon the results of any such research or tests. On the contrary, the testimony of the medical experts at the hearing in the Post Office Department seems clearly to have been founded solely upon professional opinion based upon a general reading of authoritative textbooks and discussions with other members of the medical profession and indicates that with respect to the efficacy of appellee's product and plan there are two schools of thought, albeit one may be outmoded and fallacious in the opinion of a majority of the members of the medical profession.

Any conclusion reached by the Postmaster General, therefore, necessarily was based upon evidence in the nature of opinion and could not have been formulated upon ordinary factual evidence. Under these circumstances, we must apply the ruling of American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, and hold that the efficacy of kelp and the "Kelp-I-Dine Plan" is a matter upon which opinions honestly differ and the Postmaster General had no power under the two statutes involved and upon the evidence herein to issue a "fraud order." The discernible difference between this case as now before us and the McAnnulty case is this. In the McAnnulty case and in this case in the court below it was held that where opinions honestly differ as to the value of a plan or product and such value cannot be factually proven, no fraud order should issue. Our view of the present case is that there appeared a difference of opinion as to value and that no factual proof of the value or lack of value was made or offered. Accordingly, the judgment of the court below is affirmed.

O'CONNELL, Circuit Judge, (dissenting).

Since I think there was substantial evidence in fact to support the findings of the Postmaster General, I believe the judgment of the court below cannot be sustained.

In the footnote below, I quote excerpts from advertisements of appellee, which were in evidence at the hearing of the Postmaster General.[1] According to the Solicitor of the Post Office Department, whose findings and recommendation the Postmaster General adopted, the purchaser of appellee's product was led to believe that (a) one could safely reduce his weight three or more pounds per week by following appellee's prescribed treatment and without medical supervision; (b) the principal factor in accomplishing the weight reduction would be a vegetable product containing a minute quantity of iodine, which was alleged by appellee to have hunger-satisfying properties; and (c) that the accompanying diet was of a lenient

---

[1] "Reduce Lose 3 to 5 lbs. a Week. No Exercise Required. No Reducing Drugs, Absolutely Harmless. Yet Eat Plenty. Follow Kelp-I-Dine Reducing Plan. * * * Eat as You Usually Do. Don't Cut Out fatty, starchy, foods, just Cut Down on them. * * *"

"How to Quickly, Safely Reduce the lazy way. No Strain, Doctors Approve. Lose 3 to 5 lbs. a week * * * yet Eat Plenty! * * * Lose excess weight Naturally and Safely. You won't feel hungry while you take off pounds and inches."

"* * * The new Kelp-i-dine method is a simple way that requires little effort or trouble. It's a common-sense plan that employs the latest knowledge of nutrition * * * and it's free of harmful drugs, starvation diets, strenuous exercises, salts or physics. * * * Your daily intake of food can be more than adequate * * * you eat plenty * * You don't cut out starchy foods, you merely cut down on them! That's all there is to it! Kelp-i-dine is a purely vegetable product. It contains the minerals (including essential iodine) that satisfy hidden hunger, the false hunger that makes people overeat and add weight. It helps turn fat into energy * * *."

792

nature. The Solicitor further found, and the Postmaster General concurred, (a) that patients with chronic diseases could suffer serious results if they took the advertised treatment without medical guidance; (b) that not only did no modern scientific medical textbook or authority recommend the use of kelp as a reducing agent, but also its sole therapeutic effect was as a "nutritional supplement for increasing daily intake of iodine," the deficiency of which element exists only in "certain limited areas of this country"; and (c) that the diet accompanying the product, far from implementing the "adjuration to "eat plenty," called for a daily intake of approximately 1000 calories, less than one-half of the average American sustaining diet. From the foregoing, I am not prepared to say that the conclusion of the Postmaster General is patently erroneous; nor that the basis of his conclusion is the type of "opinion evidence" which was rejected in American School of Magnetic Healing v. McAnnulty 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

I think the disposition of this case is dictated by Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 60 L.Ed. 511, as applied in Donaldson v. Read Magazine, 1948, 333 U.S. 178, 68 S.Ct. 591. The function of our court, like that of the court below, is not to resolve contradictory inferences, but rather to determine if there was evidence to support the Postmaster General's findings of fraud. 333 U.S. at page 186, 68 S. Ct. 591. Surely appellee's advertisements cannot be said as a matter of law to be conduct which does not fall short of "that fair dealing of which fraud is the antithesis." 333 U.S. at page 188, 68 S.Ct. at page 597. With full opportunity to do so, appellee nevertheless failed to produce any affirmative testimony tending to prove that kelp is efficacious in the treatment of obesity. Instead, appellee attempted reliance upon testimonials of users of appellee's treatment, which I consider to be hardly convincing as a scientific foundation for appellee's representations. Cf. Research Laboratories v. United States, 9 Cir., 1948, 167 F.2d 410. Whether or not it might have been preferable that the modus operandi of appellee be tested through some other machinery such as the Federal Trade Commission, I am constrained to conclude that the Postmaster General did not here act arbitrarily or beyond his powers.

Accordingly, I should reverse the judgment of the court below. In view of the holding of the majority of this court, I need not express my opinion whether the scope of cross-examination permitted appellee at the administrative hearing was so unduly limited as to warrant remand for a rehearing.