AIR PRODUCTS AND CHEMICALS,
INC., Plaintiff-Appellee,

v.

ILLINOIS CENTRAL GULF RAILROAD
COMPANY, Defendant-Appellant.

No. 82–3356.

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1983.

484

Breazeale, Sachse & Wilson, Murphy J. Foster, III, Baton Rouge, La., for defendant-appellant.

Durrett, Hardin, Hunter, Dameron & Fritchie, Wallace A. Hunter, Baton Rouge, La., for plaintiff-appellee.

Before TATE, Circuit Judge, and DAVIS,* District Judge.**

TATE, Circuit Judge:

The defendant carrier ("Illinois Central") appeals. The district court judgment awarded the plaintiff consignee ("Air Products") damages caused by a misdelivery to its premises of contaminating cargo intended for another consignee. Air Products' complaint is based upon the Carmack Amendment. 49 U.S.C. § 20(11) (1906). The district court awarded Air Products the damages resulting from the breach through such misdelivery of Illinois Central's contract to deliver the intended cargo to Air Products, as specified by the bill(s) of lading issued by Illinois Central to Air Products. Illinois Central appeals, principally contending that the present consignee does not have a cause of action against a carrier for breach of a contractual obligation under the Carmack Amendment, because, as to the misdelivered damage-causing cargo, the consignee Air Products had not been issued a bill of lading and, therefore, as to this cargo, no contract was made between the parties.

We affirm. We agree with the district court that the Carmack Amendment,

---

* Judge Davis participated by designation in the oral argument of this case as a United States District Judge for the Western District of Louisiana. Since that time he has been appointed as a Fifth Circuit Judge.

** This opinion is being entered by a quorum of this panel pursuant to 28 U.S.C. § 46(d). Judge Rubin was a member of the panel that heard oral argument, but subsequently disqualified himself from further participation in this case.

as judicially interpreted, provides an exclusive remedy for a breach of a contract of carriage provided by a bill of lading, and that this remedy includes foreseeable damages resulting from misdelivery of different cargo than that specified by the bill of lading issued to the damaged consignee. This conclusion, moreover, is in accord with the only other reported decision on the issue cited to us. *American Synthetic Rubber Corporation v. Louisville & Nashville Railroad Company,* 422 F.2d 462 (6th Cir.1970).

This litigation arises out of the following facts:

The plaintiff-consignee, Air Products, had ordered 400,000 gallons of a chemical from the shipper ("Shell") to be delivered over a period of days, during which a series of bills of lading were issued by the defendant railroad, Illinois Central, one for each tank car delivered without incident.

On November 1, Illinois Central delivered four tank cars to Air Products, but one of them (for which a bill of lading had been issued to a different consignee at another location) was delivered at Air Products' premises through the railroad's misrouting error. This fourth tank car contained a chemical similar to and indistinguishable in appearance to the chemical ordered by Air Products that was intended to be delivered. Without fault on the part of Air Products, which had then tested the liquids for impurities, all four tank cars thus received were, in accordance with the normal practice, emptied into a large storage tank of the chemical on its premises—but an ingredient in the misdelivered chemical contaminated the entire contents of the large storage tank. The reprocessing costs caused net damages of $73,393.12. The district court awarded this amount to Air Products.

## I.

In its complaint, Air Products had alleged that the "misdelivery" of the tank car entitled it to recover under the Carmack Amendment.[1] Pertinently to the present cause of action, this statutory enactment provides that a railroad is required to issue a bill of lading upon receiving property for transportation in interstate commerce, and that this railroad "delivering said property so received and transported shall be liable to the lawful holder of [the] bill of lading" for damages with regard to the property transported. 49 U.S.C. § 20(11) (1906).[2]

Despite the apparent statutory limitation to recovery of damage caused to the property itself transported, the Supreme Court (as the present carrier does not dispute) from its earliest interpretation has consistently construed the Amendment as likewise imposing liability upon the carrier for all reasonably foreseeable consequential damages resulting from a breach of the contract of carriage, including those resulting from nondelivery of the shipped goods as provided by the bill of lading. *See, e.g., Southeastern Express Company v. Pastime*

1. This action was originally filed in the Northern District of Illinois seeking damages primarily under a tort theory and alternatively under the Carmack Amendment for breach of contract. After two venue transfers, the action was retained by the Middle District of Louisiana. The plaintiff's tort action was met with a motion to dismiss based on the Louisiana one-year prescriptive period. The district court ruled that Illinois Central's misdelivery of the car breached the railroad's obligation under its contract of carriage and granted a recovery to Air Products. The district court, therefore, found it unnecessary to determine whether plaintiff's tort action had prescribed under Louisiana law.

2. The Carmack Amendment pertinently provides:

Any * * * railroad * * * receiving property for transportation from a point in one state * * * to a point in another state * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass * * * or any * * * railroad * * * delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered or over whose line or lines such property may pass * * *. 49 U.S.C. § 20(11) (1906).

*Amusement Company,* 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); *New York, Philadelphia & Norfolk Railroad Company v. Peninsula Produce Exchange of Maryland,* 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1906); *Adams Express Company v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). "The words 'any loss, damage, or injury to such property' . . . are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Peninsula Produce Exchange, supra,* 240 U.S. at 38, 36 S.Ct. at 232. *See also Georgia, Florida & Alabama Railway Company v. Blish Milling Co.,* 241 U.S. 190, 196, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916).

This broad interpretation of a carrier's liability under its bills of lading was premised upon what the Court conceived to be a paramount object of the legislation—to provide a uniform rule that the carrier issuing the bill of lading would be responsible to the consignee for all loss, damage, or delay arising out of the contract to transport the goods so shipped. *Peninsula Produce Exchange, supra,* 240 U.S. at 37, 36 S.Ct. at 231; *Adams Express Company, supra,* 226 U.S. at 503–10, 33 S.Ct. at 151–53; *Atlantic Coast Line Railroad Company v. Riverside Mills,* 219 U.S. 186, 199–203, 31 S.Ct. 164, 167–70, 55 L.Ed. 167 (1911). Moreover, a purpose was to substitute a paramount and uniform national law as to the rights and liabilities of interstate carriers subject to the Amendment. As stated in *Adams Express Company,* 226 U.S. at 505–06, 33 S.Ct. at 152:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract.
>
>   \*    \*    \*    \*    \*    \*
>
> To hold that the liability therein declared may be increased or diminished by local regulation or local views of public

policy will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.

What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue "for any loss, damage, or injury to such property caused by it," or by any connecting carrier to whom the goods are delivered . . . . . The liability thus imposed is limited to "any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered;" and plainly implies a liability for some default in its common-law duty as a common carrier.

### II.

Illinois Central, the defendant carrier, points out that no bill of lading was issued to Air Products with regard to the misdelivered tank car, and that thus the only contract with regard thereto is represented by the bill of lading issued to the different (intended) consignee. Illinois Central forcefully argues that the Carmack Amendment does not provide a cause of action with regard to the misdelivered cargo, since with regard thereto Air Products, the plaintiff consignee, was not "the lawful holder of [a] bill of lading" who, under the statutory language, is entitled to recover the "full actual loss . . . caused by" the carrier. 49 U.S.C. § 20(11) (quoted in note 2 *supra*).

■ What Illinois Central's argument overlooks, however, is that no claim is made that the Carmack Amendment relationship of carrier and consignee between Illinois Central and Air Products arose out of the

bill of lading for the misdelivered tank car (that had been issued to a third party). Instead, the relationship of carrier and shipper here arose out of the issuance of a series of bills of ladings by Illinois Central to transport the given chemical to Air Products' premises in accordance with their terms.

The breach of the contract here urged is Illinois Central's delivery to Air Products, causing damage, of a tank car concerning an injurious substance, instead of one of the tank cars containing the proper chemicals for which the bills of lading were issued and which Illinois Central contracted to deliver to Air Products. The misdelivery was as much a breach of the contract to deliver the right product in a tank car for which a bill of lading had been issued, as a failure to deliver or a delay in delivery of a tank car according to the terms of the bill of lading. The carrier thus breached a contractual duty to deliver a tank car containing *the product specified* to Air Products' premises.

Indeed, although it is well settled that the same act may result in tortious as well as contractual-breach liability at the election of the injured person, here the primary reason for the misdelivery arose from the bills of lading issued by Illinois Central to carry the intended chemicals to Air Products' premises, and Illinois Central's breach, in attempted performance of those contracts, through its mistaken delivery of the wrong tank car.[3]

As the authorities previously noted hold, Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier. The misdelivery here in question, in our opinion, plainly resulted from a breach in the carrier's duty to deliver to Air Products the right product as intended by the bill(s) of lading issued by it.

No authority cited or that we have found indicates that Congress intended by the Carmack Amendment that an injured consignee be deprived of a remedy for breach of contract available to him under general contractual theory. This statutory attempt to supercede overlapping and sometimes differing state remedies for breach is nowhere shown to have been intended to modify the common-law duties of a common carrier under its contract of carriage, nor to eliminate recovery for their breach simply because the carrier issued a bill of lading. To the contrary, as the decisions show, the statutory emphasis upon a carrier's liability under the bill of lading issued by it was, in the interests of shippers and consignees, to centralize in one carrier—the one that issued the bill of lading—liability for breaches in the contract of carriage, so that shippers and consignees could look to this one source (instead of seeking out fault from among connecting carriers) for damages caused by *any* default in the performance of the contract of carriage.

In 1970, the Sixth Circuit rejected contentions similar to those now advanced by Illinois Central and arising from a generically identical situation. *American Synthetic Rubber Corporation, supra.* No opposing decision is cited to us. As there stated,

> Under this interpretation [of the Amendment], the carrier is liable not only for delay in delivery but also for a misdelivery and the foreseeable damages thereby incurred by the consignee. Stated differently, the carrier is responsible under the Act for what is delivered as well as when it is delivered. The significant factor is that a carrier is answerable in damages for its breach of the contract of carriage. In the instant case, appellants' cause of action is essentially one for breach of contract of carriage in that, due to a mix-up of waybills, the carrier delivered the wrong tank car. Appellants' damages were incurred by the abortive attempt of the carrier to perform its contract. Except for the contract of carriage, no car would have been delivered.

---

**3.** For present purposes, it is unnecessary to characterize the contract breached as the entire series of bills of ladings or, instead, as only the bill of lading issued for the tank car that next arrived and for which, instead, the misdelivered car was furnished.

Except for the contract of carriage and their reliance on it, appellants' employees would not have accepted a tank car of unknown chemicals and fed them into appellants' plant facilities.

422 F.2d at 466.

We see no reason to reach a contrary conclusion and, therefore, we affirm the district court's decision on this issue, which was guided by this precedent.[4]

### III.

 Alternatively, Illinois Central argues that, even if the Carmack Amendment does recognize a cause of action for damages resulting from the present misdelivery, Air Products has not borne its burden of proving that the particular damages sought are recoverable. It relies upon the rule that recoverable damages only include those reasonably within the contemplation of the parties at the time they made the contract, so that therefore "special damages" not readily foreseeable as the ordinary and natural consequences of the contractual breach are not recoverable unless the carrier had notice or knowledge of the special circumstances from which such damage would flow. *See, e.g., Marquette Cement Manufacturing Company v. Louisville and Nashville Railroad Company,* 281 F.Supp. 944, 947–49 (E.D.Tenn., 1967), *aff'd* 406 F.2d 731 (6th Cir.1969).

In rejecting this argument, the district court found that, under the present facts, it was foreseeable to employees of Illinois Central that damages such as those sustained would result from a misdelivery of product. The facts included the knowledge of the railroad employees that Air Products immediately unloaded all deliveries of chemicals into its 800,000-gallon storage tank, since it was not feasible to do more than impurity-testing or to have tank cars (17 a month) pile up while awaiting bills of lading or more extensive chemical testing.

The district court concluded that, even without knowing the exact properties of the chemicals delivered, the railroad employees should reasonably have anticipated, under the facts known to them, that a mixture of chemicals would result in contamination of the entire contents of the large storage tank, and that it would cost money to remove the decontamination.

We are unable to hold that these primarily factual determinations by the district court are clearly erroneous, Fed.R.Civ.P. 52(a), and therefore affirm them.

*Conclusion*

Accordingly, we AFFIRM the judgment of the district court.

---

4. Despite carrier dissatisfaction with the interpretation reached by *American Synthetic,* Congress has not seen fit to narrow a carrier's liability under its bill of lading as there interpreted more than thirteen years ago. Even if we were not persuaded that the *American Syn-* *thetics* construction is more consistent with the statutory purpose and Supreme Court jurisprudence than that advanced by Illinois Central, we would be disinclined to adopt for this circuit an interpretation that differs from this previously established rule.