REVISED JANUARY 3, 2011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 13, 2010

Lyle W. Cayce
Clerk

No. 10-20115

TRAN ENTERPRISES, LLC d/b/a NUTRITION DEPOT

Plaintiff-Appellant

v.

DHL EXPRESS (USA), INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Tran Enterprises LLC, doing business as Nutrition Depot, entered into contracts with defendant-appellee DHL Express (USA), Inc. for numerous shipments of merchandise to its customers. This appeal concerns twenty-one shipments delivered between April 3, 2006, and January 31, 2007, for which DHL failed to remit collect-on-delivery (COD) payments totaling $21,991.72 to Nutrition Depot. Nutrition Depot alleged Texas common-law claims for breach of fiduciary duty, breach of contract, and conversion, as well as a claim under the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001, et seq. Nutrition Depot also asserted that the Carmack Amendment to

the Interstate Commerce Act, 49 U.S.C. § 14706, applied and prohibited the limited liability provisions of the contract. DHL removed the case to the district court below. Both parties moved for summary judgment, and the district court granted DHL's motion. Nutrition Depot appeals.

While the district court ultimately found, by a status hearing, that there were twenty-four contested shipments, the district court's summary judgment order that is challenged on appeal dealt only with twenty-one shipments. Of these twenty-one shipments, the evidence shows that DHL collected COD checks for only ten. Of the remaining eleven shipments, one check was not collected because DHL failed to deliver the goods altogether, and the remaining ten checks simply were not collected by DHL's employees upon delivery of the merchandise. All of the shipments were by ground transport save one, to Honalulu, Hawaii; that air shipment is among the ten for which DHL did collect a COD check. Nutrition Depot paid a seven dollar fee per shipment for COD service for twenty of the checks.[1]

All twenty-one disputed shipments were governed by a contract of carriage, which included the Waybill, DHL Express Terms and Conditions of Carriage, DHL Express Terms and Conditions of Service, DHL Express COD Service Conditions, and DHL Express Ground Tariff. These Terms and Conditions state that DHL's liability is limited to one hundred dollars per shipment, unless the shipper requests and pays an additional fee for "Shipment Value Protection." Nutrition Depot did not request, pay for or obtain Shipment Value Protection for any of the twenty-one disputed shipments. In recognition of its failure to collect some of the checks and Nutrition Depot's non-receipt of

---

[1] Neither party contests on appeal the district court's rulings or judgment with respect to the three other shipments not expressly addressed in the district court's summary judgment order. Nor does either party attach any significance to the failure to pay the COD seven dollar fee on one of the ground shipments, or seek to have that shipment treated differently from any other.

the collected checks, DHL issued twenty-one settlement checks to Nutrition Depot each in the amount of one hundred dollars.

The district court found that the Carmack Amendment applied to the shipments at issue and that all of Nutrition Depot's state-law claims were preempted thereunder. The district court further found that the one hundred dollar limit on liability found in DHL's Terms and Conditions was valid and enforceable under the Carmack Amendment. As a result, the district court granted summary judgment to DHL that its liability was limited to one hundred dollars per shipment, as provided in the contract of carriage, and that Nutrition Depot was not entitled to collect attorney's fees. The district court then held a status conference to determine exactly how many checks were at issue, ultimately finding that there were twenty-four contested checks and entering a final judgment requiring DHL to pay $2,400 to satisfy its liability to Nutrition Depot. Nutrition Depot now appeals, challenging the district court's grant of summary judgment to DHL.

This court reviews a district court's award of summary judgment de novo. Morris v. Covan World Wide Moving, 144 F.3d 377, 380 (5th Cir. 1998). Summary judgment is appropriate if no genuine issues of material fact exist and the movant demonstrates it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Baranowski v. Hart, 486 F.3d 112, 119 (5th Cir. 2007).

This case centers around the applicability and effect of the Carmack Amendment, 49 U.S.C. § 14706. The only issue that has been properly asserted by Nutrition Depot on appeal is whether the Carmack Amendment preempts Nutrition Depot's state law claims.

Nutrition Depot argues that its state law claims are not preempted by the Carmack Amendment because they are predicated on harm independent of any conduct related to the shipping itself. The Supreme Court has held that the Carmack Amendment is "comprehensive enough to embrace responsibility for

all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation...." Georgia, Florida & Alabama Rwy. v. Blish Milling Co.,36 S.Ct. 541, 544 (1916). The Fifth Circuit has also construed the preemptive scope of the Carmack Amendment to be sweeping, holding that "Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003) (emphasis in original) (finding that doctrine of complete preemption applied). Indeed, the Fifth Circuit has rejected nearly all state-law claims regarding loss of or damage to goods in interstate ground shipping as preempted by the Amendment. See, e.g. Moffit v. Bekins Van Lines Co., 6 F.3d 305, 306-307 (5th Cir. 1993) (finding that Carmack Amendment preempted plaintiff's claims for the tort of outrage, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, violation of the Texas Deceptive Trade Practices Act, slander, misrepresentation, fraud, negligence, gross negligence, and violation of common carrier duties under state law).

Nutrition Depot asserts that this case is distinguishable from existing Carmack Amendment jurisprudence because it does not involve loss or damage to goods shipped, but instead involves the carrier's alleged failure to remit COD payments for goods that were properly delivered. However, the Supreme Court and Fifth Circuit have found preemption not only in cases where there was actual damage to the goods shipped, but also when there has been "any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." New York, Philadelphia & Norfolk R.R. Co. v. Peninsula Produce Exch. of Maryland, 36 S.Ct. 230, 232 (1916). See also Air Products & Chemicals, Inc. v. Ill. Central Gulf R.R. Co., 721 F.2d 483, 486 (5th Cir. 1983); Moffit,6 F.3d at 306-07. (Carmack Amendment preempted claims dealing with

4

failure to ship goods on time); Duerrmeyer v. Alamo Moving and Storage One, Cor., 49 F.Supp.2d 934, 936 (W.D. Tex. 1999) (Carmack Amendment preempted state law conversion claim arising out of carrier's placement of household items in storage due to dispute over transport costs). Here, it is undisputed that the contract of carriage between Nutrition Depot and DHL respecting COD items required DHL to pick up Nutrition Depot's customers' checks for the goods when DHL delivered them to the customers and to return such checks to Nutrition Depot. One court, relying on the breadth of the Supreme Court's broad preemption language, has specifically extended the Carmack Amendment to a case where, as here, a carrier allegedly failed to remit COD payments for properly delivered goods. See Circle Redmont, Inc. v. Mercer Transportation Co., 795 So.2d 239, 242 (Fla. Dist. Ct. App. 2001) ("although the express language of the Carmack Amendment only makes reference to the actual loss, damage, or injury to property during shipping, and thus Mercer's failure to collect C.O.D. charges does not fall within the literal terms of the amendment, the United States Supreme Court has interpreted the scope of the Carmack Amendment's preemption so broadly that such claims necessarily come within its scope."). In keeping with the foregoing Supreme Court and Fifth Circuit precedent, this court, like the Circle Redmont court, finds that loss of COD checks constitutes a failure to discharge the carrier's duties under the transportation contract, and as such falls within the reach of Carmack Amendment preemption.

Nutrition Depot further asserts that its conversion and theft claims are beyond the Carmack Amendment's broad preemptive reach because these claims are for "separate harms," unrelated to the contract of carriage. Nutrition Depot relies particularly on the First Circuit case of Rini v. United Van Lines, Inc., 104 F.3d 502, 505-06 (1st Cir. 1997), which held that "[l]iability arising from separate harms–apart from the loss or damage of goods–is not preempted." That court listed as examples of separate harms assault by an employee of the carrier

on the shipper, and intentional infliction of emotional distress, explaining that these harms would be independent from the loss or damage to goods. Id. See also Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997) (also finding intentional infliction of emotional distress to be a "separate harm" that was not preempted). Nutrition Depot asserts that DHL's alleged conversion of the COD checks constitutes such a "separate harm," and cites several cases that have discussed a "conversion exception" in the context of applicability of limited liability provisions. See, e.g. Glickfield v. Howard Van Lines, Inc., 213 F.2d 723, 727-28 (9th Cir. 1954); Kemper Ins. Cos. v. Federal Express Corp., 252 F.3d 509, 512 (1st Cir. 2001) (citing Deiro v. American Airlines, Inc., 816 F.2d 1360, 1366 (9th Cir. 1987)). We acknowledge that in some circumstances, where a carrier has intentionally converted for its own purposes the property of the shipper, traditional true conversion claims should be allowed to proceed and limitations on liability should be considered inapplicable. See, e.g., Glickfield, 213 F.2d at 727 (requiring proof that the carrier has appropriated the property for its own use or gain, rather than the simple fact that the property has gone missing); Nippon Fire & Marine Ins. Co. v. Holmes Transp. Inc., 616 F. Supp. 610 (S.D.N.Y. 1985) (same). See also Mayflower Transit, Inc. v. Weil, Gotshal & Manges L.L.P.,2000 WL 34479959 (N.D.Tex.2000) (finding conversion claim to be outside preemptive scope of Carmack Amendment because stolen jewelry was not part of goods to be shipped). However, to justify such a conversion claim exception to the preemptive scope of the Carmack Amendment, the party asserting such an exception would, we hold, bear the burden of proof at trial. With respect to an issue on which the nonmovant would bear the burden of proof at trial, if the movant for summary judgment correctly points to the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant, in order to avoid an adverse summary judgment on that issue, must produce sufficient summary judgment evidence to sustain a finding in its favor

on the issue. Anderson v. Liberty Lobby Inc., 106 S.Ct. 2505, 2511 (1986); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552-53 (1986); Johnson v. Deep East Texas Narcotics Trafficking Task Force, 379 F.3d 293, 337 (5th Cir. 2004); Burge v. St. Tammany Parish, 336 F.3d 363, 374 (5th Cir. 2003).

In the instant case, Nutrition Depot failed to present any summary judgment evidence that true conversion has occurred, instead merely offering the fact that it did not receive the checks. DHL provided evidence that some COD checks were never collected at all, and that all the COD payments it did collect from Nutrition Depot's customers were logged in its system and likely sent to Nutrition Depot shortly after collection. Nutrition Depot produces no evidence in response indicating that DHL instead converted those checks for its own gain, citing instead only to its own filings at earlier stages of the case. Nutrition Depot made no effort at discovery from its customers, or otherwise, to determine if any of the COD checks had been cashed, and, if so, when or by whom or the like.

Nutrition Depot's remaining claims for breach of contract and breach of fiduciary duty arise directly from the performance of the contract of carriage since the contracted-for COD shipments include the delivery of the shipment, the pick-up of the COD check, and the return of the COD check to the shipper. Accordingly, these claims are preempted by the Carmack Amendment. See Air Prods., 721 F.2d at 485-86. Therefore, we affirm the district court's finding that all of Nutrition Depot's state law claims are preempted by the Carmack Amendment.

The other arguments urged by Nutrition Depot are raised in this court for the first time in its reply brief in this court (and, to some extent, only at oral argument). These contentions, which relate to the validity of the limited liability provisions under the Carmack Amendment, and applicability of the Carmack Amendment to the one shipment that traveled by air to Honolulu, are not

properly before the court. See, e.g. United States v. Bonilla-Mungia, 422 F.3d 316, 319 (5th Cir. 2005) ("[W]e will not entertain issues first raised by an appellant in his reply brief."). We will nevertheless briefly touch on each of these issues to show, first, that they have been waived by Nutrition Depot, and second, that even had the arguments been properly raised here, they would be unavailing.

First, while Nutrition Depot did argue before the district court that the limited liability provisions of the contract are invalid under the Carmack Amendment, Nutrition Depot did not raise this argument on appeal save in its reply brief. Even assuming, arguendo, that this argument was properly raised on appeal, the district court was correct in holding that the shipping contract's limitation of liability to one hundred dollars per shipment is indeed valid under the Carmack Amendment. The Carmack Amendment provides a general rule that motor carriers transporting property are liable to shippers "for the actual loss or injury to the property," 49 U.S.C. § 14706(a)(1), but allows for an exception under which a shipper may "establish rates for the transportation of property...under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). This court has adopted a four-pronged test for determining whether a contract's limited liability provision is valid under the statute. Under this test, a carrier may limit its liability if it: "(1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt or bill of lading prior to moving

the shipment." Hoskins, 343 F.3d at 778 (citing Rohner Gehrig Co. v. Tri-State Motor Transit, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc)).

We agree with the district court that the limited liability provision at issue in this litigation meets these four requirements, for the reasons given by the district court. Namely, DHL maintains a ground tariff that is clearly posted on its internet site; Nutrition Depot agreed to the liability limit following reasonable opportunity to choose between levels of liability; and Nutrition Depot received the waybill denoting the terms before the shipment took place. The crux of Nutrition Depot's untimely argument concerns the third prong, that it was not given a meaningful opportunity to choose between levels of protection. But in creating its online waybills, Nutrition Depot selected ground shipping, declined the available Shipment Value Protection, and agreed to the Terms and Conditions of Carriage, Terms and Conditions of Service, COD Service Conditions, and the Ground Tariff, all of which stated that DHL's liability was limited to one hundred dollars per shipment unless Shipment Value Protection was selected. While Nutrition Depot contends that the labeling of their waybills as "airbills" undermines the applicability of the limited liability terms to their shipments, the Terms and Conditions of Service clearly state that "[a] 'waybill' shall include any...air waybill...and shall incorporate these Terms and Conditions" so it is clear that the Terms and Conditions did, in fact, apply. Thus, even assuming arguendo that this limited liability issue was not waived, we would affirm the district court's conclusion that the limited liability provisions in the contract of carriage between DHL and Nutrition Depot are valid.

Nutrition Depot also attempts to argue that the Carmack Amendment does not apply to the one air shipment to Honolulu. However, Nutrition Depot had argued at all stages of this litigation that the Carmack Amendment applied to all of the contested shipments, until mentioning in its reply brief before this

court that it would not apply to the air shipment. Because appellants failed to raise this issue until their reply brief on appeal, it has been waived. Bonilla-Mungia, 422 F.3d at 319. Furthermore, no injustice is done by declining to fully address this issue because consideration of this shipment under the Airline Deregulation Act and federal common law applicable to air shipments would not result in a different outcome due to the near-identity of the preemptive effect and limited liability requirements for air and ground shipments.[2] See Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922 (5th Cir. 1997).

Accordingly, the judgment of the district court is

AFFIRMED.

---

[2] For shipments traveling by air, the Airline Deregulation Act preempts state law causes of action aside from routine breach of contract claims. See American Airlines, Inc. v. Wolens, 115 S.Ct. 817, 824-826 (1995). The breach of contract claim in this case is not "routine," because the appellant seeks to avoid a limited liability term in the contract, rather than simply seeking to enforce the contract. See Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1197 (1999); Trieber & Straub, Inc. v. United Parcel Service, Inc., 474 F.3d 379, 386-87 (7th Cir. 2007). The Airline Deregulation Act's savings clause does, however, preserve the pre-existing federal common law remedies against air carriers for lost shipments. See Sam L. Majors Jewelers, 117 F.3d at 928; accord Deiro v. American Airlines, Inc., 816 F.2d 1360 (9th Cir. 1987). Under this common law, limited liability is enforceable if there is reasonable notice to the shipper of the limited liability and fair opportunity to purchase higher liability. See Read-Rite Corp., 186 F.3d at 1198. This test is highly similar to the requirements for limited liability enforceability under the Carmack Amendment, and indeed has been interpreted by some courts as being identical. See, e.g. Kemper Ins. Cos. v. Federal Express Corp., 252 F.3d 509, 514 (1st Cir. 2001) ("[W]ith respect to the fair opportunity to declare a higher rate, the constraints on limitation clauses are the same for motor carriers covered by the Carmack Amendment as they are for air carriers covered by the released value doctrine."). Thus, for the reasons already discussed earlier in this opinion for the four-pronged Carmack Amendment limited liability test, and for the reasons given by the district court, the limited liability provision in the contract of carriage here is enforceable with respect to air shipments, as well as with respect to the ground shipments.